## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DBW PARTNERS, LLC     :
d/b/a THE CAPITOL FORUM,   :
 1629 K Street, N.W.     :
 Suite 300        :
 Washington, DC 20006    :  Civil Action:
            :
     Plaintiff,    :
            :
    v.       :
            :  JURY TRIAL DEMANDED
            :
BTG PACTUAL ASSET     :
MANAGEMENT US L.L.C.    :
 601 Lexington Avenue, 57th Floor  :
 New York, New York 10022   :
            :
     Defendant.   :

## **COMPLAINT**

   Plaintiff, DBW Partners LLC, d/b/a The Capitol Forum ("Capitol Forum" or "Plaintiff"),

for its complaint against defendant BTG Pactual Asset Management US L.L.C. ("BTG Pactual"),

alleges as follows:

### INTRODUCTION

   1.  This is an action for willful copyright infringement arising from BTG Pactual's

unauthorized distribution of Capital Forum's copyrighted material.  BTG Pactual received this

material pursuant to an agreement between BTG Pactual and Capitol Forum (the

"Subscription Agreement"), and then transmitted it to an investment firm, Market Securities,

1

LLP ("Market Securities") for its use, without authorization. This complaint states a cause of action for violation of the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* This complaint also states a cause of action for wrongful distribution of altered Capitol Forum materials under 17 U.S.C. § 1202 *et seq.* specifically, Capitol Forum copyrighted works from which the copyright management information, including copyright notices, had been removed.

2.    Capitol Forum is an investigative news and analysis company, in the business of providing time-sensitive and in-depth reports to its subscribers, including investors, industry stakeholders, law firms and policymakers. It provides a premium internet-based subscription service, publishing anywhere between 30 and 50 original, copyrighted reports each month on matters relating to mergers and acquisitions, consumer protection, government contracts, corporate investigations, and antitrust enforcement (collectively, the "CF Reports"). Each CF Report is extensively researched and carefully written, often the product of months of work, and its subscribers rely on these reports to make investment and business decisions. Given the respected nature of Capitol Forum and its journalists, the release of its reports will often affect the price of publicly traded stocks—and will do so in a matter of minutes.

3.    The CF Reports constitute a fundamental and competitively significant component of its business. These reports are provided only to its subscribers and to other authorized recipients, and each report contains a copyright notice and disclosure that its contents may not be distributed or reproduced without Capitol Forum's permission. Each subscription agreement between Capitol Forum and its subscribers explicitly prohibits transmission and distribution of its copyrighted material, including the CF Reports.

4.    In violation of the Subscription Agreement and without the authorization of Capital Forum, BTG Pactual has accessed CF Reports and transmitted them to Market

Securities. On many occasions, often within minutes of Capital Forum's own release of a CF Report, Market Securities has republished, distributed and/or displayed a summary of the CF Report to its own clients, often including verbatim excerpts from the report, thus obviating the need for potential subscribers to purchase a Capitol Forum subscription.

5.     In litigation currently pending in the United States District Court for the District of Columbia, *DBW Partners, LLC. v. Market Securities LLC,* 1:22-cv-01333-BAH (the "*District of Columbia Action*"), discovery has established that Cristina Suarez, an employee of BTG Pactual, routinely transmitted copies of CF Reports to Jennifer Donaker, an employee of Market Securities.  Capitol Forum is not yet certain of the precise number of its CF Reports that were unlawfully transmitted by BTG Pactual because Ms. Suarez and Ms. Donaker used an unauthorized private messaging service (WhatsApp) to transmit the articles, in violation of regulations of the Securities Exchange Commission ("SEC") and Financial Industry Regulatory Authority ("FINRA") regulations--after which their communications were deleted, another regulatory violation.  Other evidence produced in discovery in the *District of Columbia Action*, however, demonstrates the systematic nature of this unlawful practice, and reveals that Ms. Suarez sent over 100 CF Reports to Ms. Donaker from early 2020 through late 2021 alone.

6.     These copyright violations were willful.  The Subscription Agreement between Capitol Forum and BTG Pactual states that the subscriber [BTG Pactual] acknowledges that the Capitol Forum contents are copyrighted and that "forwarding content electronically is prohibited; posting content on an intranet or website is prohibited, and otherwise providing content to non-Users is prohibited."  Ms. Suarez and BTG Pactual knew that the CF Reports were copyrighted and that was is a copyright violation to transmit such copyrighted content,

3

directly or indirectly, to a non-subscriber such as Market Securities and Ms. Donaker. Moreover, all CF Reports that BTG Pactual sent, and Market Securities received, bear the following copyright notice: "Direct or indirect reproduction or distribution of this article without prior written permission from the Capitol Forum is a violation of Federal Copyright Law."

7. In particular, all CF Reports bear a watermark identifying the email address of the subscribing recipient to prevent unauthorized transmission and distribution of its copyrighted property. In this case, the bootlegged articles bore the watermark "CristinaSuarez@BTGPactual.com." There is no doubt that Ms. Suarez knew she was sending copyrighted material and that she knew she was violating the rights of Capital Forum. When she began sending the CF Reports to Market Securities, Ms. Suarez specifically cautioned Ms. Donaker about the watermark, writing: "pls note the watermark," to which Ms. Donaker replied: "Oh I can't miss the watermark LOL [Laugh Out Loud]." Ms. Suarez then added her own "LOL" back to Ms.Donaker.

8. Through its unlawful conduct, BTG Pactual has caused significant injury to Capitol Forum, entitling Capitol Forum to compensatory damages and equitable relief, punitive damages, and statutory damages in the amount of $150,000 per work infringed, as well as an award of attorneys' fees.

## PARTIES

9. Plaintiff Capitol Forum is a District of Columbia limited liability company. Capitol Forum maintains its principal place of business at 1629 K Street, N.W., Suite 300, Washington, D.C. 20006.

10.  Defendant BTG Pactual is a Delaware limited liability company.  BTG Factual maintains its principal place of business at 601 Lexington Avenue, 57th Floor, New York New York 10022.  Cristina Suarez is an employee of BTG Pactual and acted within the scope of her employment as to all acts alleged in this complaint.

11.  BTG Pactual is subject to personal jurisdiction in this Court as it does business in and maintains its principal place of business in this district.

## JURISDICTION AND VENUE

12.  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1338 (copyrights), and 1367 (supplemental).

13.  Venue is proper in this district pursuant to 28 U.S.C. § 1400 (copyrights). Further, BTG Pactual asserted in the *District of Columbia Action* that venue in that Court was improper because the action against it could and should have been brought in this judicial district, and thus is judicially estopped from denying venue here.

## STATEMENT OF FACTS

14.  Capitol Forum is an investigative news and legal analysis company dedicated to informing policymakers, law firms, investors, and industry stakeholders on the effect of government policy on publicly traded corporations and market competition.  Plaintiff invests substantial financial and human resources in generating original and high-quality content for its CF Reports, which relate to various sectors of the economy.  The value of the CF Reports to Capitol Forum's paid subscribers lies in the high quality of the investigative reporting and original analysis contained in the CF Reports and the timeliness with which that analysis reaches its subscribers.

15. Capitol Forum's independent reporting is the product of the full-time effort, skill, and judgment of, among others, analysts, journalists, and lawyers assigned to follow developments in particular markets.   A typical CF Report, for example, may include an in-depth analysis of the market impact of a significant policy or detail a parallel investigation of a major antitrust review.

16. The CF Reports constitute proprietary and economically valuable analysis, and are presented in a manner that is intended to inform, among other things, a subscriber's investment decisions and provide guidance on a myriad of issues.  The high quality and timeliness of the CF Reports is also a means of attracting new clients and contributes to Capitol Forum's outstanding reputation in the financial, business, and legal worlds.

17. The CF Reports, intended for its paid subscribers, all contain copyright notices and state that they may not be reproduced or distributed without its permission.  All CF Reports and emails issued by Capital Forum contain a copyright notice that states that "Direct or indirect reproduction or distribution of this article without prior written permission from the Capitol Forum is a violation of Federal Copyright Law."

18. Capitol Forum is the exclusive owner of copyrights in the CF Reports, which are the subject of valid and subsisting U.S. copyright registrations, including the following relevant U.S. copyright registration numbers:  TX0008828873, TX0008870337, TX0008879226. TX0008873304, TX0008882202, TX000885367, TX 0008898431, TX0008898423, TX0008904787,  TX008940334, TX0008939090, TX0008941939, TX0008953721, TX0008993172, TX0008996171, TX0009025943, TX0009070990, TX0009032436, TX0009032413, TX0009032843, TX0009031554, TX0009033043, TX0009108744, TX0009094440, TX0009071495, and TX0009082488.

19. Capitol Forum's reporting has market impact. It is therefore important to Capitol Forum that the distribution of its CF Reports are limited to its authorized recipients, as distribution of the information to non-authorized recipients would reduce the value of the information to its subscribers.

20. The Subscription Agreement between Capitol Forum and BTG Pactual states:

> Subscriber Organization acknowledges that the contents of The Capitol Forum are copyrighted by The Capitol Forum or its licensors. This Agreement grants Subscriber Organization a limited, non-exclusive, revocable, nontransferable, non- assignable worldwide license to access The Capitol Forum content. This license permits only the individual Users identified in Appendix A to this Agreement to access The Capitol Forum content. Each such User may view The Capitol Forum content on a computer or similar device and may print one paper copy for their individual use. Copies created as part of the normal background operation of a computer system and not normally viewed (e.g., system back-up) are permissible. Except as provided above, no copying or distribution in any media is authorized. Thus, forwarding content electronically is prohibited; posting content on an intranet or website is prohibited, and otherwise providing content to non-Users is prohibited.

21. BTG Pactual is a financial services company involved in asset management, sales and trading, and investment banking. It is a division of Banco BTG Pactual, one of the largest financial organizations in Latin America.

22. Cristina Suarez is a portfolio manager employed by BTG Pactual. Jennifer Donaker is Head of US Operations for Market Securities. Ms. Donaker's role at Market Securities is to acquire market information from various sources and to transmit that information to Market Securities' clients. Ms. Suarez and Ms. Donaker are personal and business acquaintances, having met during a prior employment.

23. Since 2015, Ms. Suarez and Ms. Donaker have been surreptitiously obtaining and exchanging bootlegged CF Reports, with Ms. Suarez cautioning Ms. Donaker not to disclose her source. Ms. Suarez and Ms. Donaker intentionally distributed and transmitted CF Reports

with knowledge that the Capitol Forum copyright notices used for copyright management had been removed from the CF Reports, in violation of 17 U.S.C. 1202. When her employer, BTG Pactual, became a Capitol Forum subscriber in early 2020, Ms. Suarez acquired access to the CF Reports and began sending the CF Reports to Ms. Donaker, without authorization from Plaintiff, on a regular basis.

24.   To conceal this unlawful conduct Ms. Suarez and Ms. Donaker had an understanding that the CF Reports sent by BTG Pactual to Ms. Donaker at Market Securities would not be shared outside the Market Securities organization. This arrangement was an attempt to reduce or eliminate the possibility that such knowing copyright infringement would be discovered should the watermark "CristinaSuarez@BTGPactual" be discovered in the possession of other unauthorized persons.  Ms. Suarez acknowledged this understanding in the *District of Columbia Action:* "when I sent her anything, she wasn't going to share it outside," and further acknowledged that she would not have sent the CF Reports to Ms. Donaker if she thought Ms. Donaker would send them elsewhere.   To ensure Ms. Donaker's compliance with this mutual understanding, Ms. Suarez specifically cautioned Ms. Donaker to note the Capitol Forum watermark when she began sending the CF Reports.  She also sought and received assurances from Ms. Donaker that the CF Reports had not been sent outside the Market Securities organization.

25.   To further conceal this unlawful conduct, Ms. Suarez transmitted the CF Reports to Ms. Donaker through an unauthorized messaging service.  Under Rule 17a-4(b)(4) promulgated by the SEC under section 17(a) of the Securities Exchange Act, Rules 204-2(a)(7) and 204-2(e)(1) promulgated under the Investment Advisers Act of 1940, and FINRA Rules 2210(b)(4) and 4511(a), BTG Pactual and Market Securities were required to record

and preserve all communications between Ms. Suarez and Ms. Donaker. The purpose of these rules was to support the ability of the SEC and FINRA to ensure compliance by the securities industry with applicable laws and regulations, investigate misconduct, and protect the public interest.

26. In violation of these SEC and FINRA mandates, and in an attempt to conceal her wrongdoing, Ms. Suarez used the private messaging application "WhatsApp" on their personal cellular telephone devices to transmit the CF Reports to Ms. Donaker without Plaintiff's authorization. In another attempt to conceal their knowingly infringing conduct, Ms. Suarez and Ms. Donaker utilized the WhatsApp application setting that permitted them to delete their communications, in further violation of SEC and FINRA rules.

27. In furtherance of its willful infringement, Market Securities falsified documents in the *District of Columbia Action* to conceal the extent of their infringing conduct. Like most securities firms, BTG Pactual and Market Securities use the Bloomberg Persistent Chat platform to record and preserve their communications, as required by SEC and FINRA rules. As such, this platform recorded and preserved Ms. Donaker's written communications with Ms. Suarez, as well as Ms. Donaker's internal communications with members of her team at Market Securities. In discovery during the *District of Colombia Action*, Market Securities produced falsified transcripts of the Bloomberg Chat communications—despite having certified them as "complete and correct" under Rule 26(g)(1)(A) of the Federal Rules of Civil Procedure.

28. Forensic analyses revealed that prior to producing its records from the Bloomberg Persistent Chat platform in response to discovery requests in the *District of Colombia Action*, Market Securities systematically deleted: (1) every reference showing that Ms. Suarez was

sending (or had sent or would send) CF Reports to Market Securities; (2) every reference
showing that Market Securities employees were instructed to, and did in fact, contact Ms.
Suarez for information from the CF Reports; and (3) every reference to the Capitol Forum
watermark on CF Reports, all of which is evidence of willful infringement.  Investigation into
this discovery abuse is ongoing.

29.  BTG Pactual's infringement of Capitol Forum's copyrights was willful.  BTG
Pactual knew that its actions constituted copyright infringement and BTG Pactual has
otherwise acted with reckless disregard of Capitol Forum's rights.  The CF Reports that BTG
Pactual received pursuant to the Subscription Agreement bore a clear copyright notice and
warning that put BTG Pactual on notice that transmitting the CF Reports without
authorization was prohibited. The CF Reports transmitted to BTG Pactual also contained a
watermark that identified the authorized recipient of the report pursuant to the Subscription
Agreement. The agreement between Ms. Suarez and Ms. Donaker by which Ms. Suarez would
send Ms. Donaker CF Reports on the condition that Ms. Donaker would not share them
outside the Market Securities organization also demonstrates the willfulness of these
violations.  So too does the fact that Ms. Suarez and Ms. Donaker sent the CF Reports over
the unauthorized WhatsApp platform and then deleted all such communications in an attempt
to hide their wrongful conduct.

30.  Between February 2020 and November 2021, Ms. Suarez sent over 100 CF
Reports and/or distributed or transmitted the copyrighted content from the CF Reports to Ms.
Donaker and/or to other Market Securities employees.  At no time has Capitol Forum
provided BTG Pactual permission to transmit its CF Reports or any part of its copyrighted
content to Market Securities, or to anyone else.

31.   The Subscription Agreement between Capitol Forum and its subscribers permits Capitol Forum to monitor electronically the activity on its site and to determine if its copyrighted articles are e-mailed to an unauthorized user or if an unauthorized user attempts to gain access.  Capitol Forum software engineers use these techniques to ensure copyright compliance and detect copyright violations by its subscribers, including BTG Pactual, and they did so constantly throughout the period of BTG Pactual's copyright infringement activities, 2020-2021. However, once a CF Report is downloaded by a subscriber, Capitol Forum can no longer monitor transmission or distribution of the CF Report.

32.   Despite this due diligence, Capitol Forum did not discover, and could not reasonably have discovered, BTG Pactual's copyright infringement activities during the period 2020-2021 because BTG Pactual was downloading the CF Reports and surreptitiously transmitting them in a manner that could not be detected by Capitol Forum's monitoring tools. It was not until discovery in the *District of Columbia Action* that Capitol Forum learned that it was BTG Pactual who was providing Market Securities with unauthorized access to the CF Reports. In particular, on April 27, 2023, during discovery in the *District of Columbia Action*, Market Securities produced three CF Reports bearing the watermark ChristinaSuarez@BTGPactual.com, which indicated that those CF Reports were sent to the subscribing recipient Christina Suarez at BTG Pactual. This disclosure in April 2023 was the first time Capitol Forum became aware that BTG Pactual had violated its copyrights.

33.   Capitol Forum promptly sought leave to amend the complaint in the *District of Columbia Action* to add BTG Pactual as a defendant.  That motion was denied on August 10, 2024, on the grounds that the Court found it had no personal jurisdiction over BTG Pactual.

34.   On September 20, 2024, Capitol Forum served a subpoena on Ms. Suarez in the *District of Columbia Action*.  The documents produced by Ms. Suarez pursuant to that subpoena revealed the widespread nature of BTG Pactual's copyright infringement, showing Ms. Suarez's routine practice of sending CF Reports to Ms. Donaker and others at Market Securities without Capital Forum's permission—both with and without prompting from Ms. Donaker.   The subpoena return also disclosed, for the first time, that CF Reports exchanged between Ms. Suarez and Ms. Donaker had been altered to remove the Capitol Forum copyright management information, including copyright notices, in violation of 17 U.S.C. 1202.

35.   Beyond the application of the discovery rule, this case presents a special circumstance that warrants the application of the doctrine of equitable tolling to the running of the statute of limitations under the Copyright Act.  As noted above, SEC and FINRA rules mandated that the 2020-2021 communications between Ms. Suarez and Ms. Donaker, wherein CF Reports were transmitted in violation of Plaintiff's rights, be recorded and preserved. However, those communications were conducted over the unauthorized WhatsApp platform and were later deleted.  As Ms. Suarez took affirmative acts to conceal her wrongdoing, the Copyright Act's three-year statute of limitations should be equitably tolled until April 27, 2023.

36.   Furthermore, the Copyright Act's three-year statute of limitations should be equitably tolled because of Ms. Suarez's and Ms. Donaker's fraudulent concealment of their conduct that constituted copyright infringement and improper distribution or transmission of CF Reports with deleted or altered copyright management information.  They perpetrated this wrongful conduct in two ways.

37.    First, Ms. Suarez and Ms. Donaker violated the SEC and FINRA rules mandating the recording and preservation of their copyright infringing communications by using the unauthorized WhatsApp platform for those communications and deleting them.

38.    Second, they attempted to conceal disclosure through their arrangement that the bootlegged CF Reports would not be shared outside the Market Securities organization.  For example, on March 3, 2020, Ms. Suarez sent the first CF report to Ms. Donaker after BTG Pactual had obtained its own Capitol Forum subscription in February, Upon transmitting this report via the unauthorized WhatsApp platform, Ms. Suarez specifically cautioned Ms. Donaker to "note the watermark," a reminder that the transmission should not be shared outside the Market Securities organization in order to conceal Ms. Suarez's identity.  Ms. Suarez then deleted the communication or failed to preserve it by using the WhatsApp setting that permitted automatic deletions.  All subsequent infringing and wrongful conduct was similarly concealed due to the transmission through WhatsApp, the deletion of communications via which the CF Reports were transmitted, and the agreement with Market Securities that the CF Reports should not be distributed outside of Market Securities.

39.    Ms. Suarez's and Ms. Donaker's fraudulent concealment prevented Capitol Forum from detecting their copyright infringement and other wrongful behavior during the 2020-2021 period despite Capitol Forum's due diligence in constantly using electronic monitoring methods in an attempt to detect infringements of its copyrighted articles throughout the 2020-2021 period and thereafter.

## COUNT I

### (Copyright Infringement)

40.    Each of the preceding paragraphs 1 through 39 is incorporated herein.

41.   Capitol Forum owns a valid copyright in its proprietary CF Reports, which are original to Capitol Forum and is copyrightable subject matter under the U.S. Copyright Act, 17 U.S.C. § 101, et seq.

42.   The CF Reports transmitted to Capitol Forum's subscribers are protected by the copyright laws and are the subject of valid and subsisting U.S. Copyright Registrations.

43.   BTG Pactual had access to the CF Reports by virtue of a Subscription Agreement with Capitol Forum.

44.   BTG Pactual has infringed Capitol Forum's copyright in its proprietary CF Reports by accessing and transmitting, displaying, and/or distributing CF Reports to Market Securities without Capitol Forum's consent or authorization and/or by orally or otherwise transmitting the copyrighted content contained in the CF Reports to Market Securities without Capitol Forum's consent or authorization.

45.   The infringement of Capitol Forum's CF Reports is substantial in quantity and quality and reduces the economic value of the copyrighted works.

46.   BTG Pactual's conduct is in violation of the copyright owner's exclusive rights of reproduction, preparation of derivative works, and distribution under 17 U.S.C. §§ 106(1), (2), and (3).

47.   BTG Pactual's copyright violations were willful. BTG Pactual had actual notice of Capitol Forum's copyrights in and to the CF Reports. BTG Pactual knows, and at all times knew, that its conduct constituted copyright infringement and/or has otherwise acted with reckless disregard of Capitol Forum's rights and the high probability of infringement.

48.   Upon information and belief, without a permanent injunction, BTG Pactual intends to continue its willful infringement of the CF Reports. By reason of BTG Pactual's intentional and willful copyright infringement of the CF Reports, Capitol Forum has been and will continue to be irreparably harmed unless BTG Pactual is permanently enjoined from its unlawful conduct.

49.   Capitol Forum has no adequate remedy at law.

50.   As a direct and foreseeable consequence of BTG Pactual's willful conduct, Capitol Forum has been and continues to be damaged in an amount to be determined at trial and is entitled, at its election, to statutory damages of $150,000 per CF Report infringed, or actual damages incurred as a result of BTG's wrongful conduct, and BTG Pactual's profits attributable to its infringing conduct, as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. §§ 504, 505.

## COUNT II

### (Distribution of Copyright Material Knowing that Copyright Management Information was Altered or Removed)

51.   Each of the preceding paragraphs 1 through 50 is incorporated herein.

52.   Capitol Forum owns a valid copyright in its proprietary CF Reports, which are original to Capitol Forum and constitute copyrightable subject matter under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*

53.   Capitol Forum utilizes copyright management information that appears on its CF Reports, including copyright notices and watermarks identifying the email address of the authorized subscribing recipient to prevent unauthorized transmission and distribution of its copyrighted property.

15

54.   17 U.S.C. Section 1202 prohibits the distribution of copyrighted works with knowledge that copyright management information, including copyright notices, had been removed or altered.

55.   BTG Pactual has transmitted and/or distributed CF Reports that had been altered to remove copyright management information, including the Capitol Forum copyright notice.

56.   BTG Pactual's copyright violations were willful. In distributing the altered CF Reports, Ms. Suarez specifically called attention to end of the article which revealed the source of the article and the alteration.

57.   As a direct and foreseeable consequence of BTG Pactual's willful conduct, Capitol Forum has been and continues to be damaged in an amount to be determined at trial and is entitled, at its election, to statutory damages in the amount of up to $25,000 per violation, as well as its costs and reasonable attorneys' fees pursuant to 17 U.S.C. §1203(b)(5).

## PRAYER FOR RELIEF

**WHEREFORE**, Capitol Forum seek judgment against BTG Pactual on the foregoing claims as follows:

1.      That BTG Pactual, its agents, servants, employees, licensees, sponsors, associates, and attorneys, and all persons acting by, through, or in active concert with any of them, be permanently enjoined from directly or indirectly infringing the CF Reports or any copyrightable content owned by Plaintiff, including copying, displaying, distributing, or transmitting any such works, or creating unauthorized derivative works thereof:

16

2.      That BTG Pactual account to Plaintiff for all gains, profits and advantages derived from BTG Pactual's wrongful acts;

3.      That BTG Pactual be required to pay Plaintiff such actual damages suffered by Plaintiff as a result of BTG Pactual 's copyright infringement, and any of BTG Pactual 's profits that are attributable to the copyright infringement and are not taken into account in computing actual damages, as provided by 17 U.S.C. § 504(b);

4.      That, at Plaintiff's election, Plaintiff be awarded statutory damages in the amount of $150,000 for each CF Report infringed, as provided by 17 U.S.C. § 504(c);

5.      That BTG Pactual be required to pay Plaintiff $25,000 for each violation of 17 U.S.C. Section 1202;

6.      That BTG Pactual be required to pay Plaintiff punitive damages;

7.      That BTG Pactual has engaged in willful copyright infringement;

8.      That Plaintiff recover all of the costs, disbursements, and attorneys' fees incurred in bringing its claims in this action, pursuant to 17 U.S.C. Sections 505 and 1203; and

9.      Such other and further relief as it deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: December 16, 2024                    Respectfully submitted,

                                            *Neil H. Koslowe*
                                            _____
                                            NEIL H. KOSLOWE (NY Bar No. 230984)
                                            Potomac Law Group, PLLC
                                            1717 Pennsylvania Avenue, N.W., Suite 1025
                                            Washington, DC 20006
                                            Tel. (202) 320-8907
                                            nkoslowe@potomaclaw.com

                                            JOHN B. WILLIAMS (D.C. Bar No. 257667)
                                            Williams Lopatto, PLLC
                                            1629 K Street, N.W., Suite 300
                                            Washington, DC 20006
                                            Tel: (202) 277-8435
                                            jbwilliams@williamslopatto.com

                                            ANDREA L. CALVARUSO
                                            Kelley Drye & Warren LLP
                                            3 World Trade Center
                                            175 Greenwich Street
                                            New York, NY 10007
                                            Tel. (212) 808-7853
                                            acalvaruso@kelleydrye.com


                                            *Counsel for Plaintiff*