# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DBW PARTNERS, LLC d/b/a THE CAPITOL
FORMUM, FORUM,

   *Plaintiff,*

v.

BTG PACTUAL ASSET MANAGEMENT
US, LLC,

   *Defendant.*

Civil Action No. 1:24-cv-09836-LGS

## <u>PLAINTIFF'S RESPONSE AND COUNTER STATEMENT TO BTG PACTUAL'S RULE 56.1 STATEMENT</u>

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Plaintiff DBW Partners, LLC, doing business as The Capitol Forum, responds to Defendant BTG Pactual Asset Management US, LLC's Statement of Material Facts, and submits its Counter-Statements of material facts not in dispute.

## RESPONSE TO BTG PACTUAL'S RULE 56.1 STATEMENT

### PROCEDURAL HISTORY

1.      On December 16, 2024, Plaintiff DBW Partners LLC d/b/a The Capitol Forum ("Capitol Forum") brought this lawsuit against Defendant BTG ("Action"). Dkt. 1.  ADMITTED

### CAPITOL FORUM AND ITS SUBSCRIBERS

2.      Capitol Forum is a media company established in 2012. Ex. 2[1] at 10:11-11:12. ADMITTED

3.      Capitol Forum publishes electronic publications pertaining to large corporate mergers and acquisitions involving publicly traded companies. Id. ADMITTED WITH QUALIFICATION: Capitol Forum issues publications relating to mergers and acquisitions, as well as consumer protection, government contracts, corporate investigations, and antitrust enforcement. Downey Dec., at 2

4.      Capitol Forum has also broadened the scope of its publications to include antitrust and corporate investigation publications. Id.  ADMITTED WITH QUALIFICATION—See above.

---

[1] All Exhibits referenced herein are attached to the Declaration of Ryan E. Dornberger in support of the Motion for Summary Judgment.

5.      The full text of Capitol Forum's publications used to be sent to subscribers via e-mail, but today subscribers only receive an e-mail with the first few lines of the publication (and a link to access the full publication). Id. at 55:1-56:21; 41:2-11.  ADMITTED

6.      When accessing the full text through the e-mailed link, a watermark of the subscriber's e-mail address is displayed across the publication. Id. at 42:19-43:3. ADMITTED

7.      Capitol Forum's reporters draft publications by examining public merger announcements, investigating on the Hill, and interviewing sources. Id. at 86:5-10; Ex. 3 at 19:3-11.  ADMITTED

8.      In 2012, one of Capitol Forum's target subscribers were merger arbitrage investors. Id. at 19:12-20:6. ADMITTED

9.      The merger arbitrage investors and other financial firms are particularly interested in reports on mergers and monopoly issues which impact their strategic investments in the market. Id.; Ex. 2 at 76:5-12.  ADMITTED

10.     Between March 2020 and December 2021, Capitol Forum had between 71 and 88 financial industry subscribers. Ex. 4 at 107:8-108:2; Ex. 5.  ADMITTED WITH QUALIFICATION—As of October 2021, Capitol Forum had 143 subscribers.  Downey Declaration at 38

11.     These financial industry subscribers constitute the "vast majority" of Capitol Forum's revenue. Ex. 4 at 114:10-13.  ADMITTED WITH QUALIFICATION—the vast majority of revenue is from financial subscribers as of the end of 2024.  BTG Ex. 4 at 114:2-6.

**CAPITOL FORUM'S EXPERIENCE WITH COPYRIGHT INFRINGEMENT**

12.     On August 24, 2016, Capitol Forum became aware of a financial industry subscriber who was sharing Capitol Forum publications in an online chatroom. Ex. 2 at 103:16-104:10. ADMITTED

13.     Upon discovery, Trevor Baine, remarked that he is "generally opposed to going after people for forwarding around" publications because doing so could be detrimental to Capitol Forum's business. Id. at 104:11-105:8; Ex. 6.  ADMITTED that the quoted words were used but otherwise DENIED to the extent that the quotation is truncated to remove to the fact that Baine also stated: "but this seems pretty egregious. So happy to discuss a course of action to deal with this ass-clown, for lack of a better word". Further, the title of Baine's email is "Lawsuit to discuss!" Downey Dec., at 32

14.     On July 6, 2017, Capitol Forum became aware of yet another financial industry subscriber, who was sending Capitol Forum publications to "several other financial firms." Ex. 2 at 99:4-21; Ex. 7. ADMITTED

15.     In response, Teddy Downey, stated in an email dated July 6, 2017: "[I]'m getting pretty annoyed at how easy it is for wall street to steal our stuff at this point[.]" Ex. 7. ADMITTED that the quoted words were but DENIED to the extent that the quotation is incomplete and should be read in context.  Downey Dec., at 34

16.     At that time, Capitol Forum was  hearing that its financial industry subscribers, including financial firms, were sharing its copyrighted publications. Ex. 2 at 101:9-102:2; Ex. 7. ADMITTED, with clarification that the "time" was 2017.  Since 2018, when Capitol Forum's distribution and monitoring system was changed, instances of infringement have been infrequent. Downey Dec., at 29

17.     Teddy Downey stated in an e-mail that "a buddy of mine has had a lot of success selling subscriptions to stolen fonts this way." Ex. 2 at 102:19-103:11; Ex. 7. ADMITTED that the quoted words were but DENIED to the extent that the quotation is incomplete fails to note that Downey also suggested having Capitol Forum's attorneys contact the infringer, which they did and obtained a financial settlement.  Downey Dec., at 35

18.     In 2017, Capitol Forum discovered that another financial industry subscriber had sent as many as 150 Capitol Forum publications to a Bloomberg reporter, who was then reposting portions in their own email blasts. Ex. 2 at 91:3-92:14; 97:3-18; Ex. 8.  ADMITTED

19.     In response, Capitol Forum did not sue the subscriber who was sending the publications to Bloomberg. Ex. 2 at 97:3-98:5. ADMITTED WITH CLARIFICATION:  the subscriber agreed to provide cooperation. Downey Dec., at 4

20.     But Capitol Forum did sue Bloomberg for Copyright Infringement. Ex. 2 at 97:3-98:5; Ex. 3 at 47:2-4.  ADMITTED

21.     The Bloomberg lawsuit eventually settled, with Bloomberg making a confidential payment to Capitol Forum to end the lawsuit. Ex. 2 at 111:19-112:12. ADMITTED

## THE ALLEGED COPYRIGHT INFRINGEMENT AND THE D.C. ACTION

22.     On October 25, 2021, another subscriber informed Capitol Forum that Market Securities was regularly republishing the content of its publications. Ex. 10; Ex. 3 at 72:22-73:5. DENIED—a subscriber informed Capitol Forum of infringement but did not state that Market Securities was regularly republishing content.   BTG Ex. 3

23.     Between October 25, 2021, and October 27, 2021, that subscriber forwarded three instances of suspected republishing by Market Securities to Capitol Forum. Ex. 10; Ex. 11. ADMITTED

24.     On October 27, 2021, Josep Alba emailed Teddy Downey, Jake Williams, and Trevor Baine and stated, "[p]ersonally would love to know who is sharing that with them as is a subscriber sharing the whole pieces without any doubts." Ex. 11. ADMITTED

25.     Josep Alba testified that "the only way you can get hands on the full article is if somebody that has access to the full article sending it." Ex. 1 at 67:3-17. ADMITTED

26.     Josep Alba testified that when he said "without any doubts" a subscriber was sharing the publications with Market Securities it was because he "struggle[ed] to see a way in which you can have access to a full article if you are not a subscriber of The Capitol Forum." Id. at 67:18-68:6. ADMITTED

27.     Capitol Forum sent a cease-and-desist letter to Market Securities on October 27, 2021, which accused Market Securities of "regularly obtaining unauthorized copies of Capitol Forum's copyrighted materials after they are distributed to Capitol Forum subscribers." Ex. 3 at 87:11-88:4; Ex. 9. ADMITTED

28.     Capitol Forum filed a copyright infringement lawsuit against Market Securities in the District of D.C. on May 13, 2022 ("D.C. Action"). Ex. 12. ADMITTED

29.     In the D.C. Action, Capitol Forum alleged contributory infringement against Market Securities for inducing a subscriber to send the copyrighted publications. Ex. 12 ¶ 46 (stating claim for contributory infringement "by encouraging, inducing, and causing Capitol Forum subscribers to provide such reports or the contents of those reports to it."); see also id.

¶ 22 ("Market Securities has, on information and belief, induced one or more Capitol Forum subscribers to transmit the Capitol Forum publications to it . . .").  ADMITTED

30.     Through discovery in the D.C. Action, Capitol Forum learned that Market Securities was in possession of some Capitol Forum publications that indicated they came from BTG. Ex. 2 at 115:12-21.  ADMITTED

31.     On June 16, 2023, Capitol Forum amended its complaint in the D.C. Action to add BTG as a party to the copyright infringement allegations. Ex. 15 at 1.  ADMITTED

32.     The court permitted the amendment and BTG was added as a party to the D.C. Action on September 11, 2023. See id. ADMITTED.

## CAPITOL FORUM'S DISMISSAL FROM D.C. ACTION AND THE FILING OF THIS ACTION

33.     On October 17, 2023, BTG moved to dismiss the D.C. Action for lack of personal jurisdiction and improper venue. Ex. 13.   ADMITTED

34.     BTG alleged and subsequently proved that it was not subject to general jurisdiction in D.C., nor did it have a substantial connection with D.C. for specific jurisdiction. Ex. 13 at 6.   ADMITTED

35.     BTG requested, in the alternative to dismissal, that the causes of action against BTG be transferred to the Southern District of New York. Ex. 13 at 23-24.   ADMITTED

36.     BTG argued that transfer was in the interest of justice, would save Capitol Forum time and expense of refiling the case, and agreed that transfer would not prejudice BTG. Ex. 13 at pg. 23-24.  ADMITTED

37.     Capitol Forum objected to transfer to the Southern District of New York. Ex. 15 at 33 n.5.  ADMITTED

38.     On August 10, 2024, the court held that it lacked personal jurisdiction over BTG and granted BTG's Motion to Dismiss. Ex. 15. ADMITTED

39.     In the D.C. court's Memorandum Opinion granted BTG's motion to dismiss, the court stated: "Along with its motion to dismiss for lack of personal jurisdiction, BTG requests, in the alternative, that the claim against it be transferred to the Southern District of New York. Transferring the claim against BTG would divide the claims to be pursued in two different federal district courts. Given the obvious resource and logistical challenges that would present to plaintiff to pursue these claims before two separate courts, plaintiff does not consent to transfer. Moreover, as plaintiff notes, '[i]f personal jurisdiction exists, then 28 U.S.C. § 1404(a) would apply to any transfer request,' but BTG has not addressed the factors to be considered for such transfer. Dismissal, rather than transfer, of the claim against BTG is thus appropriate." Ex. 15 at 33 n.5 (internal citations omitted).  ADMITTED

40.     On December 16, 2024, Capitol Forum brought this Action in the Southern District of New York. Dkt. 1.  ADMITTED

41.     Capitol Forum asserts that BTG has infringed 136 publications, between 2020 to 2021, by sending them to Market Securities. Ex. 14 at Interrogatory No. 1 & Ex. A. ADMITTED that the most recent count is 136.  Capitol Forum's investigation is continuing and BTG Pactual has been informed that additional violations may be added.

## CAPITOL FORUM'S RULE 56.1 COUNTER-STATEMENT

**42.**     Capitol Forum is an investigative news and analysis publisher, providing time-sensitive and in-depth reports to its subscribers relating to mergers and acquisitions, consumer

protection, government contracts, corporate investigations, and antitrust enforcement.  Capitol

Forum was founded in 2012 and soon became one of the leading publications in the field.  Due

to its respected status in the area, Capitol Forum has been able to command a premium price for

our on-line subscription products.  Downey Dec., at 2

43.    When Capitol Forum began publishing, it applied for copyright registrations for

all its publications.  Upon obtaining its copyrights, Capitol Forum placed a copyright notice on

each publication.  Capitol Forum's subscription agreements prohibit the subscriber from

transmitting, copying, or posting Capitol Forum publications.  Downey Dec., at 3, and Exhibit 1

to Downey Dec.

44.    In August 2016, Capitol Forum learned that a subscriber was posting its content in

a chatroom it hosted.  In July 2017, Capitol Forum learned that another subscriber was sending

its articles to other financial firms.  In both instances a Capitol Forum subscriber alerted it to the

infringement.  Capitol Forum subscribers pay a lot of money for the subscriptions, and when

they see its content on other websites, they become annoyed and will contact Capitol Forum to

complain.    In both instances Capitol Forum retained counsel to investigate the matter, which

resulted in settlements with the infringers.  Downey Dec., at 3.

45.    In December 2017, Capitol Forum became aware of another instance of

infringement involving a subscriber who was forwarding its material to the Bloomberg Financial

"First Word" financial platform.  Bloomberg was publishing summaries of Capitol Forum's

publications shortly after they were released.  Because the subscription agreement has a

provision permitting electronic monitoring of a subscriber's accessing and emailing activity,

Capitol Forum was able to identify the subscriber who was sending articles to Bloomberg. Capitol Forum contacted the subscriber, who confirmed that he had been forwarding articles and agreed to cooperate in the enforcement efforts against Bloomberg, which resulted in a lawsuit and a subsequent financial settlement.  Downey Dec., at 4

46.    After the first two infringements, Capitol Forum realized the need to develop additional safeguards to prevent infringing activity.  It commissioned an extensive overhaul of our distribution and electronic monitoring system, which took over a year to complete and cost over $250,000.  The reconfigured system was launched in early 2019 and removed a subscribers' ability to forward full articles electronically.  Downey Dec., at 5

47.     Under the reconfigured system, Capitol Forum would inform the subscribers of our publications by sending them an electronic "alert."  The alert would provide the title (or "headline") of the article, and often the opening sentence or two.  To access the full article, the subscriber would then need to request a copy by clicking on a link.  A copy of the article would appear on the subscriber's screen embossed with an indelible watermark containing the subscribers' name and email address.  Downey Dec., at 5

48.    The reconfigured system does not permit the subscriber to forward the full text of an article electronically.  The subscriber can send the alert, but if they do, Capitol Forum is able to track that activity. Downey Dec., at 5

49.    Capitol Forum's software engineers monitor and report any attempts to forward the alerts to unauthorized users.  This permits Capitol Forum to determine if an organization

might be distributing its content to more individuals than the subscription agreement permits, and to track the IP addresses of persons or entities unaffiliated with that subscriber. Downey Dec., at 5

50.    Capitol Forum's system also permits its engineers to monitor log-in attempts from different IP addresses to help determine if a subscriber has given his or her log-in credentials to an unauthorized user. Downey Dec., at 5

51.     It remains possible that a subscriber could download Capitol Forum articles, or take a screenshot of them, and send them to an unauthorized person of entity. If they did so, the article would contain the watermark. Downey Dec., at 6

52.    Watermarking is an effective deterrent to infringement, as any subsequent recipient of the publication would know the identity of the person or entity that sent the article. Downey Dec., at 6

53.    In October 2021, Capitol Forum was informed by a subscriber that he had been receiving summaries of its articles from an investment firm known as Market Securities LLC. Capitol Forum attempted to determine the identity of the subscriber who had been forwarding its articles to Market Securities, but its monitoring system did not reveal any activity that would permit the identification of the source, who was subsequently identified as Cristina Suarez of BTG Pactual. Downey Dec., at 7

54.     Discovery in the Market Securities case revealed how Suarez was able to avoid detection. She did not attempt to send the alerts to Market Securities, or to provide it with her log-in information. Instead, she generally downloaded the articles to Adobe Acrobat and sent them to Evernote, a file sharing application. Then, she transferred the articles to her personal cellular device and resent them to Market Securities using the WhatsApp application on her cellphone. Downey Dec., at 7, Exhibit 2

55.     Suarez configured her WhatsApp settings to automatically delete all transmissions of Capitol Forum articles. Downey Dec., at 7, Exhibit 3

56.     In October 2021, when Capitol Forum learned that Market Securities was receiving our publications, it had 143 subscribers. Downey Dec., at 38

57.     By transmitting the articles over WhatsApp and deleting them, Suarez violated SEC rules and guidance that require all client communications be preserved and prohibit the business use of apps that allow employee to automatically destroy their messages. Downey Dec., at 8, Exhibit 4

58.     By transmitting the articles over WhatsApp, Suarez violated BTG Pactual's "E-Comms" policy that prohibits the use of "any non-BTG Pactual electronic messaging system to conduct BTG Pactual Business. Downey Dec., at 8, Exhibit 5

59.     By transmitting the articles via WhatsApp, Suarez avoided any internal or external review of her messaging to Market Securities.  Downey Dec., at 8

60.     Suarez obtained a commitment from Market Securities that the watermarked articles would not be forwarded outside the Market Securities organization.   Downey Dec., at 9

61.     The following conversation between Suarez and Jennifer Donaker of Market Securities was transcribed from text files BTG Pactual produced in this case (Downey Dec., at 9):

> (2020-05-12 06:08:51 PM UTC) CRISTINASUA (BTG PACTUAL ASSET MA): **pls tell me you didn't forward it**
>
> (2020-05-12 06:11:10 PM UTC) JENLEE83 (MARKET SECURITIES LL):  **Of course not**
>
> (2020-05-12 06:11:18 PM UTC) JENLEE83 (MARKET SECURITIES LL):  Everyone gave me the headline, someone was not on the desk
>
> (2020-05-12 06:12:40 PM UTC) JENLEE83 (MARKET SECURITIES LL): Look at your WA
>
> (2020-05-12 06:24:01 PM UTC) CRISTINASUA (BTG PACTUAL ASSET MA): ok got it
>
> (2020-05-12 06:36:53 PM UTC) JENLEE83 (MARKET SECURITIES LL): **And your name is all over, I promise I would never send it!**
>
> (2020-05-12 06:37:00 PM UTC) JENLEE83 (MARKET SECURITIES LL): Let alone for an article that is so useless

**62.**     Capitol Forum retained counsel to investigate the conduct of Market Securities. Counsel sent a cease-and-desist letter to Erin Baskett, the Chief Compliance Officer of Market Securities, with a copy to Donaker.  Downey Dec., at 10, Exhibit 6.

63.    The cease-and-desist letter demanded that Market Securities retain all copies of Capitol Forum publications that it had received to enable Capitol Forum to determine which subscriber had been sending Capitol Forum articles to Market Securities.  Downey Dec., at 10

64.    Market Securities refused to identify the subscriber who had sent it the articles. Jennifer Donaker of Market Securities testified that she did not disclose the subscriber's identity because she wanted to protect her client base.  Downey Dec., at 10, Exhibit 7

65.    The following conversation between Jennifer Donaker and Steven Grahling of Market Securities was transcribed from text files Market Securities produced in this case (Downey Dec., at 12):

> 11/23/2021 18:48:07 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: I told the lawyer to ask who sent the Eddie clips so I can cut the client in question off
>
> 11/23/2021 18:48:17 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Bc I would probably find out anyway in discovery
>
> 11/23/2021 18:48:31 *** STEPHEN GRAHLING (MARKET SECURITIES LLC) posted: Great, dying to know who
>
> 11/23/2021 18:49:02 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Dunon if they'll tell us
>
> 11/23/2021 18:49:17 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted**: Just like we won't tell them names of who gives us articles**
>
> 11/23/2021 18:49:30 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: **Both searching for the Rats**

66.     The following conversation between Jennifer Donaker and a friend was transcribed from text files Market Securities produced in this case (Downey Dec., at 12): [the name of Donaker's friend has been removed at the request of counsel for Market Securities]

01/11/2022 15:21:08 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Omg **Capforum is being a royal pain in the a\*\***

\*\*\*\*\*\*

01/11/2022 16:04:48 *** [DONAKER FRIEND] posted: Wtf do they want

01/11/2022 16:04:59 *** [DONAKER FRIEND] posted: Thot mostly witch-hunt for who is sharin

01/11/2022 16:05:06 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Yes **but I am not giving up my clients**

01/11/2022 16:05:10 ***[DONAKER FRIEND] posted: obv

01/11/2022 16:05:15 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Right **so they won't settle otherwise**

01/11/2022 16:05:26 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: **But im willing to fight at this point bc if I win, they can go fk off entirely**

01/11/2022 16:05:31 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: And my win will rpobably protect the entire fkg industry.

\*\*\*

01/11/2022 16:06:06 ***[DONAKER FRIEND] posted: What a waste of time

01/11/2022 16:06:40 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: And money and stress

01/11/2022 16:06:43 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Bc **we will end up in court**

**67.**     On May 16, 2022, Capitol Forum filed a lawsuit against Market Securities in the United States District Court for the District of Columbia. Downey Dec., at 12

**68.**     The following statements of Jennifer Donaker were transcribed from text files Market Securities produced in this case (Downey Dec., at 13):

> 05/16/2022 11:59:02 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: **CapFOrum suit just hit**
>
> ***
>
> 05/16/2022 12:41:03 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: **But I am on a vendetta against those fkers**

**69.**     Capitol Forum's lawsuit alleged a cause of action for direct infringement based on Market Securities' summarization of its articles and a cause of action for contributory infringement based on Market Securities' unauthorized receipt of Capitol Forum articles from a subscriber (whose identity was unknown at that time). Downey Dec., at 14

70.     Market Securities argued in its motion to dismiss that Capitol Forum's allegation that a subscriber had sent it a copy of a Capitol Forum's publication was "speculative and fails to account for oral transmission."   Downey Dec., at 14, Exhibit 8

71.     Judge Beryl A. Howell dismissed the contributory infringement claim.  Her decision states: "While alleging that, on information and belief, a third party (in particular, "one or more Capital Forum subscribers") "transmit[ted] the Capitol Forum publications" to Market

Securities at the latter's inducement, Compl. ¶ 22, this allegation merely amounts to a conclusory assertion that contributory copyright infringement has occurred. This theory as to how defendant obtained timely copies of Capitol Forum reports for allegedly infringing purposes is just speculation at this point." Downey Dec., at 15, Exhibit 9

72.     Judge Howell denied Market Securities' motion to dismiss the direct infringement claim. Downey Dec., at 15 and 16, Exhibit 9

73.     On April 27, 2023, Market Securities produced in discovery Capitol Forum publications bearing Cristina Suarez' watermark. Downey Dec., at 16, and Exhibit 10 This was the first time Capitol Forum learned that BTG Pactual was the entity which had been sending Capitol Forum articles to Market Securities. Downey Dec., at 16

74.     In April and May 2023, Market Securities produced summaries of Capitol Forum articles which it had sent to its clients. Market Securities refers to these summaries as "blasts." These "blasts" showed that Market Securities had been summarizing Capitol Forum since March 2020. BTG Pactual had became a Capitol Forum subscriber in February 2020. Downey Dec., at 17

75.     In a telephone conversation with Josep Alba of Capitol Forum, Suarez acknowledged that she had sent articles to Jennifer Donaker. Suarez told Alba that she had sent articles based on the understanding that Donaker would not disseminate the articles beyond Market Securities. The Alba call memo states: "She also emphasized few times that when

sending the report, she was very clear with Market Securities that those reports were not to be disseminated in any shape or form outside market securities." Downey Dec., at 18 and Exhibit 11

76.     Suarez told Alba that she could not recall exactly how many Capitol Forum articles she had sent to Market Securities, but that "it was certainly less than 5 times." Downey Dec., at 18, Exhibit 11.

77.     In deposition discovery, Eddie Lee of Market Securities testified: "In my entire time at Market Securities, I only saw the actual CapForum article only a couple times, maybe, less than five times.   And I only recall one person's name, Suarez." Downey Dec., at 19, Exhibit 13

78.     Steven Grahling of Market Securities testified that he had never seen a Capitol Forum article. Downey Dec., at 19, Exhibit 14

79.     Suarez testified that she had sent only a "handful" of Capitol Forum articles to Donaker, all of which had been deleted from her WhatsApp. Downey Dec., at 19, Exhibit 15

80.     Donaker testified that Suarez had sent a "handful" of Capitol Forum articles to Market Securities. Downey Dec., at 19, Exhibit 16

81.     In April and May 2023, Market Securities also produced documents which contained internal conversations among the Market Securities employed and external conversations between Market Securities employees and Market Securities clients, including

Cristina Suarez. These documents were transcripts that had been prepared by Market Securities from the original text files maintained on the Bloomberg Persistent Chat platform.  Market Securities' counsel certified these transcripts as "complete and accurate" copies of the original text files.  Downey Dec., at 20

82.     The transcripts produced in 2023 by Market Securities were not accurate or complete. Market Securities deleted every reference showing that Suarez was "sending," or would be "sending," or had "sent" Capitol Forum articles to Donaker.  Market Securities also deleted every reference to the Suarez watermark.  Downey Dec., at 20

83.     In its 2023 document production, Market Securities withheld communications from Market Securities personnel who had received watermarked Capitol Forum articles from Suarez.   The following conversation was transcribed from text files Market Securities produced in this case (Downey Dec., at 21):

> 12/16/2021 14:21:07 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Btw, I should call you, CapForum sent us a letter and in some of the retrieval your name popped up
>
> ***
>
> 12/16/2021 14:21:39 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: Im **purposefully keeping you out of it,** will ring
>
> 12/16/2021 14:21:48 *** TZU-WING YEE (MARKET SECURITIES - KYTE GROUP) posted: ok
>
> 12/16/2021 14:22:01 *** JENNIFER DONAKER (MARKET SECURITIES LLC) posted: **Not even sure they realize we have an EU team and rather keep it that way**

**84.**     On October 30, 2024, Market Securities' counsel informed Capitol Forum that "after speaking with BTG's counsel, we have recently become aware of Bloomberg chats that were inadvertently missed/not included in our client's production" and that Market Securities would be "supplemental" production.  Downey Dec., at 22, Exhibit 17 This supplemental production consisted of another retyped transcript of the original text files and did not contain all relevant material retained on the Bloomberg Persistent Chat platform.   Downey Dec., at 22

85.     Capitol Forum then demanded and ultimately received all the original text files, which were received in late November 2024. Downey Dec., at 22

86.   Capitol Forum received a production of documents from BTG on October 31, 2024, shortly before the deposition of Cristina Suarez on November 12, 2024.  That production revealed conversations in which Suarez and Donaker were discussing Capitol Forum articles. At her deposition Suarez was shown references in those conversations in which she told Donaker she was "sending," and asked:

> **Q:  And then you say sending.  What do you mean by sending?**
> **A.   I don't know.**
>
> **Q:  That meant you were sending her the Capitol Forum article, didn't it?**
> **A: That's your interpretation.**
>
> **Q:  What's your interpretation?**
> **A.  I don't have one.**
>
> **Q:  What sere you sending?**
> **A: I don't know.  Downey Dec., at 23, Exhibit 15 at page 104**

87.  Suarez was shown references in those conversations where she told Donaker to "note the watermark," and asked:

> **Q: And then you go down later to right at the bottom of the page to say" please note the watermark."  Do you see that?**
> **A: Yes**
>
> **Q: What do you mean by that?**
> **A: I don't know.**
>
> **Q. You don't know what the watermark means?**
> **A: I don't.   Downey Dec., at 23, Exhibit 15 at page 57.**

88. Suarez was shown Capitol Forum articles found in the possession of Market Securities, and asked:

> **Q: Did you send this to Jennifer Donaker?**
> **A: I don't know.**
>
> **Q: Do you know how Market Securities got a copy of a Capitol Forum article with your watermark on it?**
> **A: I do not Downey Dec., at 23, Exhibit 15 at page 49**
>
> **Suarez claimed she did not know what a copyrighted article was.**
>
> **Q:  This is a copyrighted article, is it not?**
> **A: What is a copyrighted article.  Downey Dec., at 23, Exhibit 15 at page 41**

89.  Donaker was deposed on November 21, 2024.  She testified that she, along with Lee and Grahling, had prepared the transcripts produced in 2023.  Donaker could not recall who had made the decision to delete each of the Suarez references and watermark references but testified that every one of the deletions had been inadvertent and "an innocent mistake."  Downey Dec., at 26, Exhibit 18

90.    On February 18, 2025, Capitol Forum filed a motion for sanctions against Market Securities.  Downey Dec., at 27 and Exhibit 19

91.    At a hearing held on March 13, 2025, Judge Howell described Market Securities conduct as "shocking;" that the witnesses had "dissembled" during their depositions; and that the witnesses were trying to "narrow the damages."  She stated, "I have a clear suspicion based on the very careful deletions of lines within chats that there was nothing inadvertent about this." Judge Howell cautioned counsel that she would not hesitate to make referrals for perjury to the U.S. Attorney' office and ordered that the witnesses who had been deposed should consult with private counsel.  Downey Dec., at 27, Exhibit 12; pages 9, 15, 19-20, 36-50, and 60

92.    On July 23, 2025 Donaker was redeposed and asked if she expected anyone to believe that her deletions were innocent mistakes.  Her response: "Nope."  Downey Dec., at 27, Exhibit 20

93.    In February 2024, Capitol Forum learned of another instance in which its copyrights were being infringed.  For marketing purposes, Capitol Forum will occasionally release certain articles that are no longer timely on its public website, using what is known as an RSS feed.  While a user is welcome to read an article received through an RSS feed, it is not permitted to retransmit or republish that article for commercial purposes.  When Capitol Forum discovered that a company was obtaining its content through the RSS feed and republishing the articles on its website, it retained counsel to pursue the matter, resulting in a financial settlement.

Capitol Forum also terminated its practice of releasing articles on an RSS feed.   Downey Dec., at 28

94.    Since Capitol Forum changed its distribution and monitoring systems in 2018, and since the industry became aware of its aggressive copyright enforcement stance by virtue of the lawsuit against Bloomberg, Capitol Forum has identified only one instance in which a subscriber has been sending copies of its articles to an unauthorized user—this matter involving BTG Pactual and Market Securities.  Downey Dec., at 29

95.    Capitol Forum enforced its copyright protections in each instance in which it learned of an infringement—and achieved financial settlements in all situations.  Downey Dec., at 30

96.     In its brief in support of its motion for summary judgment, BTG cites an email from Trevor Baine stating that he was "generally opposed to going after people for forward around."  BTG incorrectly claims that Baine said this "because doing so could be detrimental to Capitol Forum's business."  The Baine email also states: "but this seems pretty egregious. So happy to discuss a course of action to deal with this ass-clown, for lack of a better word".  The title of the email is "Lawsuit to Discuss!"  Downey Dec., at 32

97.    The email reads as follows:

> **I'm generally opposed to going after people for forwarding around (though I know that's a violation as well), but this seems pretty egregious (a. a paying subscriber is annoyed by it b. DeMuth is presumably profiting in some way off it), so happy to discuss a course of action to deal with this ass-clown, for**

**lack of a better word.   [Exhibit 6 to the Dornberger Declaration submitted in support of BTG Pactual's Motion for Summary Judgment]**

98.    BTG also cites an email from me in which Teddy Downey states he was "getting pretty annoyed at how easy it is for wall street to steal our stuff."  The untruncated section reads:

> **my buddy says, "i notice that you've been using our fonts in violation of our ip. rather than focus on the past, i'd love to discuss a subscription to bring you into compliance."something along those lines we probably want to talk with a lawyer about how to have that conversation in an ethical way anyway, i'm getting pretty annoyed at how easy it is for wall street to steal our stuff at this point [Exhibit 7 to the Dornberger Declaration submitted in support of BTG Pactual's Motion for Summary Judgment]**

99.    In this email, Downey suggests that our lawyers "get a letter" to the infringer, which it did.  *Id.*  Capitol Forum also obtained a settlement with that infringer.  Downey Dec., at 35

100.    The Downey email was written in July 2017.  Since that time, Capitol Forum has taken significant actions to protect its copyright and prevent infringement.  Downey Dec., at 5 and 36

101.    Since 2018, it has not been "easy" to steal Capitol Forum publications. The following references were transcribed from text files Market Securities produced in this case (Downey Dec., at 36):

> 07/15/2020 16:58:12 JENNIFER DONAKER, MARKET SECURITIES LL Says Cannot send due to water mark, **CapForum super strict**

04/15/2020 15:34:21 JENNIFER DONAKER, MARKET SECURITIES LL Says **CApforum is also insanely litigious**

05/01/2020 17:12:58 JENNIFER DONAKER, MARKET SECURITIES LL Says

**I won't risk it, they are too litigious, they have sued companies**

09/14/2021 15:44:19 JENNIFER DONAKER, MARKET SECURITIES LL Says **I don twant it landing at one of the lawyers desk I meet for example…bc someone sent to Capforum**

12/08/2020 19:09:13 STEPHEN GRAHLING, MARKET SECURITIES LL Says **People reluctant to forward CF because it is watermarked**

102.    The following conversation was transcribed from text files BTG Pactual and

Market Securities produced in this case [Downey Dec., at 37]:

03/03/2020 20:02:57 CRISTINA SUAREZ, BTG PACTUAL ASSET MA **Says pls note the watermark**

03/03/2020 20:07:16 JENNIFER DONAKER, MARKET SECURITIES LL Says Yes yu

03/03/2020 20:07:18 JENNIFER DONAKER, MARKET SECURITIES LL Says TY

03/03/2020 20:07:22 JENNIFER DONAKER, MARKET SECURITIES LL Says **Oh I can't miss the watermark lol**

03/03/2020 20:07:29 CRISTINA SUAREZ, BTG PACTUAL ASSET MA Says **lol**

103.   The following conversation was transcribed by Capitol Forum from text files

Market Securities produced in this case [Downey Dec, at 38]:

> 04/15/2020 15:33:02  STEPHEN GRAHLING, MARKET SECURITIES LL Says
> Jenny - if you have CF, **can you send** to [MARKET SECURITIES CLIENT]
> 04/15/2020 15:34:11  JENNIFER DONAKER, MARKET SECURITIES LL Says
> **No I can't, I've said before its Cristinas and totally watermarked**
>
> 04/14/2020 17:15:40  JENNIFER DONAKER, MARKET SECURITIES LL Says
> Can you do SHORT summary (Cap forum always too long) and balst out but **NO**
> BTG. And **NO SENDING TO CLIENTS. Cristina's name is all over it**
>
> 06/04/2020 17:03:51  JENNIFER DONAKER, MARKET SECURITIES LL Says
> Yup but **Cristina name all over it so pls be extra careful**
>
> 04/24/2020 15:50:58  EDDIE LEE, MARKET SECURITIES LL Says   **Cristinas
> name is everywhere so I would never send**

103.   On July 3, 2025, Capitol Forum served a notice of deposition on BTG Pactual

under Rule 30(b)(6) to determine the bases of BTG Pactual's affirmative defenses.  Downey

Dec., at 40, Exhibit 21

104.    BTG Pactual's corporate representative was William Rose, Chief Operating

Officer of BTG Pactual.   In preparation for this deposition, Mr. Rose spoke with BTG counsel

for over four hours on two occasions.  At the deposition, he was asked about the grounds, if any,

supporting the statute of limitations defense. Downey Dec., at 40, Exhibit 22.  Rose testified:

> **Q:  Does BTG dispute the allegation in the complaint that Capitol**
>
> **Forum did not know of BTG's copyright violations until 2023?**

**A:  No we do not dispute.**

**Q.    Does BTG dispute the allegation that Capitol Forum exercised**

**due diligence in enforcing it's copyright protections?**

**A.  No we do not dispute**

Dated November 4, 2025

By:     */s/ John B. Williams*_____
          John B. Williams (DC Bar #257667)
          HARTY WILLIAMS LLC
          1629 K Street, N.W. Suite 300
          Washington, D.C.  20006
          Tel.: (202) 277-8435
          jbwilliams@hartylawgroup.com

          */s/ Neil H. Koslowe*
          Neil H. Koslowe (DC Bar #361792)
          Potomac Law Group, PLLC
          1717 Pennsylvania Avenue, N.W.
          Suite 1025
          Washington, DC 20006
          Tel.: (202) 320-8907
          nkoslowe@potomaclaw.com

          *Counsel for Plaintiff*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 4, 2025, a true and correct copy of PLAINTIFF'S

<u>RESPONSE AND COUNTER STATEMENT TO BTG PACTUAL'S RULE 56.1</u>

<u>STATEMENT w</u>as served by electronic mail on Defendants' counsel:

> Charles S. Baker
> TROUTMAN PEPPER LOCKE LLP
> 600 Travis St., Suite 2800
> Houston, Texas 77002
> (713) 226-1200
> Charles.baker@troutman.com

> Jonathan D. Polkes
> WHITE & CASE LLP
> 1221 Avenue of the Americas
> New York, New York 10020
> 212-819-8333
> Jonathan.polkes@whitecase.com

> _____/s/_____
> John B. Williams