UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DBW PARTNERS, LLC d/b/a THE CAPITOL FORUM,<br><br>*Plaintiff,*<br><br>v.<br><br>BTG PACTUAL ASSET MANAGEMENT US, LLC,<br><br>*Defendant.* | Civil Action No. 1:24-cv-09836-LGS |

**REPLY IN SUPPORT OF DEFENDANT BTG PACTUAL ASSET MANAGEMENT US, LLC'S MOTION FOR SUMMARY JUDGMENT**

i

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS .................................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I.  INTRODUCTION .............................................................................................................. 1

II. ARGUMENT ...................................................................................................................... 2

    A.  As a Matter of Law, the Statute of Limitations Clock Against BTG Started to Run in October 2021 ................................................................................... 2

        1.  In The Second Circuit, an Infringer's Identity is Not Required to Start the Limitations Clock ........................................................................ 2

        2.  Capitol Forum's Out-Of-Circuit Authority and Attempts to Distort the Second Circuit Law Fail to Persuade ....................................................... 4

        3.  No Genuine Dispute of Material Fact Exists That Capitol Forum Knew Sufficient Facts About the Infringement in October 2021 ............... 6

    B.  The December 2024 Complaint in This Case Was Untimely, and the Claims Are Barred by the Statute of Limitations ..................................................... 7

        1.  Equitable Tolling Applies Only in "Rare and Exceptional Circumstances" ...................................................................................... 8

        2.  Capitol Forum Failed to Act Diligently When It Waited for Months to Re-File This Action Until After the Statute of Limitations Had Expired ................................................................................................ 9

    C.  Objections to the Downey Declaration ................................................................ 11

III. CONCLUSION ................................................................................................................ 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Bd. of Internal Med. v. Rushford*,
   841 F. App'x 440 (3d Cir. 2020) ....................................................................................4

*Corcoran v. N.Y. Power Auth.*,
   202 F.3d 530 (2d Cir. 1999)............................................................................................2

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
   603 U.S. 799 (2024).....................................................................................................5, 6

*Everly v. Everly*,
   958 F.3d 442 (6th Cir. 2020) ..........................................................................................4

*Gager v. Principi*,
   300 F. App'x 30 (2d Cir. 2008) ......................................................................................8

*Higgins v. N.Y. Stock Exch., Inc.*,
   942 F.2d 829 (2d Cir. 1991)............................................................................................8

*Holland v. Florida*,
   560 U.S. 631 (2010)........................................................................................................7

*Jackson v. Destiny's Child*,
   No. 1:23-CV-10507 (LTS), 2024 U.S. Dist. LEXIS 13019 (S.D.N.Y. Jan. 18,
   2024) ...............................................................................................................................8

*Johnson v. Nyack Hosp.*,
   86 F.3d 8 (2d Cir. 1996).......................................................................................8, 9, 10

*Kregos v. AP*,
   3 F.3d 656 (2d Cir. 1993)..............................................................................................10

*Kronisch v. United States*,
   150 F.3d 112 (2d Cir. 1998)............................................................................................2

*Lehrman v. Lovo, Inc.*,
   790 F. Supp. 3d 348 (S.D.N.Y. 2025).............................................................................5

*Maurizio v. Goldsmith*,
   230 F.3d 518 (2d Cir. 2000)..........................................................................................10

*Merch. v. Levy*,
   92 F.3d 51 (2d Cir. 1996)................................................................................................2

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
 112 F.4th 144 (2d Cir. 2024) ...................................................................................................3

*Monsarrat v. Zaiger*,
 303 F. Supp. 3d 164 (D. Mass. 2018) ......................................................................................3

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
 108 F.4th 458 (7th Cir. 2024) ..................................................................................................4

*Nealy v. Warner Chappell Music, Inc.*,
 60 F.4th 1325 (11th Cir. 2023) ................................................................................................4

*Perez v. Harbor Freight Tools*,
 698 F. App'x 627 (2d Cir. 2017) .............................................................................................8

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
 572 U.S. 663 (2014)..............................................................................................................5, 6

*Psihoyos v. John Wiley & Sons, Inc.*,
 748 F.3d 120 (2d Cir. 2014)......................................................................................................3

*Rodriguez-Garcia v. Mun. of Caguas*,
 354 F.3d 91 (1st Cir. 2004)......................................................................................................4

*Rotella v. Wood*,
 528 U.S. 549 (2000).................................................................................................................2

*Santa-Rosa v. Combo Recs.*,
 471 F.3d 224 (1st Cir. 2006)....................................................................................................4

*Seck v. Info. Mgmt. Network*,
 697 F. App'x 33 (2d Cir. 2017) ...............................................................................................3

*Smalls v. Collins*,
 10 F.4th 117 (2d Cir. 2021) .....................................................................................................8

*Starz Ent., LLC v. MGM Domestic TV Distrib., LLC*,
 39 F.4th 1236 (9th Cir. 2022) ..................................................................................................4

*Warren Freedenfeld Assocs., Inc. v. McTigue*,
 531 F.3d 38 (1st Cir. 2008)...................................................................................................3, 4

**I.     INTRODUCTION**

The claims against BTG are time-barred. The Second Circuit applies the discovery rule in copyright cases, and it is triggered once the plaintiff knows about its injury, i.e., the infringing act—even when the identity of the defendant requires further investigation. The undisputed record shows Capitol Forum knew in October 2021 that (1) Market Securities was publishing infringing reports and (2) a Capitol Forum subscriber was providing the reports to Market Securities. Capitol Forum immediately began investigating, sent a cease-and-desist letter to Market Securities on October 27, 2021, and filed its D.C. Action. As a matter of law, the limitations period against BTG started running in October 2021.

Capitol Forum's bloated, non-compliant,[1] and largely inadmissible declaration fails to create a genuine dispute over material facts where none exists. It creates much noise over why it took Capitol Forum some time to add BTG as a party to the D.C. Action. But that misses the mark. BTG was timely added to the D.C. Action within three years of October 2021. But the D.C. Action was dismissed in August 2024. By that time, Capitol Forum knew BTG's identity. Through nothing but its own lack of diligence, it waited until December 2024 to sue BTG in the correct forum—New York. Under the well-established Second Circuit law, equitable tolling cannot save this belated suit. The statute of limitations expired in October 2024. And so did Capitol Forum's claims against BTG.

---

[1] The declaration submitted by Capitol Forum is more than twice the allowed 2,500-word limit. It also attaches 22 exhibits, more than this Court's 15-exhibit limit, and several exhibits exceed the 15-page limit.

## II.     ARGUMENT

### A.     As a Matter of Law, the Statute of Limitations Clock Against BTG Started to Run in October 2021

#### 1.     In The Second Circuit, an Infringer's Identity is Not Required to Start the Limitations Clock

The Second Circuit follows the discovery rule in copyright cases. And that rule is triggered once the plaintiff knows sufficient facts about its injury—even if the identity of each wrongdoer requires further investigation. Indeed, a "plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim." *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (citation omitted). "Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." *Id.* (citation omitted). Thus, the discovery rule in the Second Circuit is triggered once a plaintiff "possesse[s] sufficient information to know the critical facts of his claim." *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543-44 (2d Cir. 1999) (cause of action accrued under discovery rule no later than a cancer diagnosis from radiation exposure, even without knowledge gained from later investigation that the plaintiff had actually worked on equipment which experienced a radiation leak).

This focus on the injury has been consistent throughout the Supreme Court and the Second Circuit's application of the discovery rule. Consider a few examples. In applying the discovery rule to RICO claims, the Supreme Court explained that "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000). To hold otherwise would mean that "the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete." *Id.* at 558. For a copyright co-ownership claim, "[a] cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merch. v. Levy*, 92 F.3d 51, 56

2

(2d Cir. 1996) (citing *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.1992)). In the employment discrimination context, the discovery rule dictates that a claim "accrues from the moment of the discrete act constituting an unlawful employment practice, not from when the discriminatory motive is discovered." *Seck v. Info. Mgmt. Network*, 697 F. App'x 33, 34 (2d Cir. 2017).

The discovery rule is no different when it comes to copyright infringement claims. The Second Circuit, again, focuses on the injury—the alleged infringement. "[C]opyright infringement claims do not accrue until actual or constructive discovery of the relevant *infringement*." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (emphasis added); *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 151 (2d Cir. 2024) ("Thus, to be timely, MGP must have been unable, with the exercise of due diligence, to discover *the infringing activity* prior to October 12, 2018, three years before the complaint was filed.") (emphasis added).

The decision in *Monsarrat*, despite being out-of-Circuit, drives home this point because the First Circuit's take on the discovery rule mirrors that in the Second Circuit—it runs from discovering the injury. Specifically, "[t]he discovery rule for copyright infringement cases in the First Circuit is expressly tied to discovery of the 'conduct' in question—not the identity of the alleged infringer." *Monsarrat v. Zaiger*, 303 F. Supp. 3d 164, 166 (D. Mass. 2018).

Although Capitol Forum seeks to marginalize *Monsarrat* and proclaims it misread the First Circuit law, multiple First Circuit cases support its holding:

- *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) ("a claim accrues only when a plaintiff knows or has sufficient reason to know of the conduct upon which the claim is grounded");

3

- *Santa-Rosa v. Combo Recs.*, 471 F.3d 224, 228 (1st Cir. 2006) (in a copyright ownership case a claim accrues when "the plaintiff 'knows or has reason to know of the act which is the basis for the claim'");

- *Rodriguez-Garcia v. Mun. of Caguas*, 354 F.3d 91, 96-97 (1st Cir. 2004) ("Under federal law, the limitations period begins to run when the plaintiff 'knows or has reason to know of the injury which is the basis for his claim.'").

2.  **Capitol Forum's Out-Of-Circuit Authority and Attempts to Distort the Second Circuit Law Fail to Persuade**

None of Capitol Forum's authorities warrant against the Second Circuit's established application of the discovery rule.

First, Capitol Forum makes it sound as if many other Circuits have adopted its read on the discovery rule. Not so. Only one case actually dealt with a situation where the plaintiff learned the infringer's identity after it knew the copyright had been infringed.[2] And the case is from the Third Circuit where "the discovery rule means that the statute of limitations period begins to run as of the date of the discovery of the cause of action." *Am. Bd. of Internal Med. v. Rushford*, 841 F. App'x 440, 443 (3d Cir. 2020). A copyright claim did not accrue until the copyright holder knew the identity of the infringer. But, as detailed above, this Third Circuit case conflicts with the Second

---

[2] And the five other cited cases are also distinguishable. None of the cases decided whether an infringement claim accrues when a plaintiff learns of the infringement but does not know the identity of the wrongdoer. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 480 (7th Cir. 2024) (discussing how the discovery rule applies to recovering copyright damages); *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1330 (11th Cir. 2023) (same); *Starz Ent., LLC v. MGM Domestic TV Distrib., LLC*, 39 F.4th 1236, 1239 (9th Cir. 2022) (same); *Everly v. Everly*, 958 F.3d 442, 453 (6th Cir. 2020) (addressing accrual of copyright ownership claims, not infringement claims); *Warren Freedenfeld Assocs. v. McTigue*, 531 F.3d 38, 45 (1st Cir. 2008) (copyright infringement claim did not accrue until plaintiff came upon a rendering of his architectural plans in a publication—not when the building premised on the plans opened to the public).

4

Circuit's take on the discovery rule, which has always focused on discovering the injury—not the date of discovery of a cause of action against a specific person.

Second, *Lehrman v. Lovo* does not deviate from the Second Circuit law. In *Lehrman*, the court held that copyright infringement claims accrue "when the holder discovers or should have discovered the infringement." *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 374 (S.D.N.Y. 2025) (citing *Psihoyos*, 748 F.3d at 124). Moreover, the court never considered whether the identity of the defendant was required to trigger the discovery rule, as the infringement and the identity of the wrongdoer were discovered at the same time. *Id.* Consequently, the decision does not inform the Court how to apply the discovery rule in a situation where the discovery of the infringement and the identity of the infringer occur at different times.

Third, neither *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014) nor *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 603 U.S. 799, 813 (2024) holds otherwise. *Petrella* nowhere stated that a discovery rule is triggered only when the identity of an infringer is known. It dealt with a different issue entirely: i.e., whether the Copyright Act has an evergreen limitations period, so that each new infringing act triggers a new three-year limitations period. *Petrella*, 572 U.S. at 670-71. The full relevant portion of the opinion cited by Capitol Forum holds that the "limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief. A copyright claim thus arises or accrue[s] when an infringing act occurs. It is widely recognized that the separate-accrual rule attends the copyright statute of limitations. Under that rule, when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Id.* (quotations omitted). *Corner Post* also dealt with a distinct issue: it held that the publication of federal regulation did not trigger the statute of

5

limitations because the claim did not accrue until the plaintiff was actually injured by a final agency action. *Corner Post*, 603 U.S. at 813.

Neither *Petrella* nor *Corner Post* hold that a court would not "be able to grant relief to a copyright plaintiff who sued 'John Doe' with an incomplete cause of action." Dkt. 89 at 19. To the contrary, parties in copyright and other cases routinely sue "John Doe" defendants pending discovery into the identity of all parties. Capitol Forum failed to follow this customary practice but, nevertheless, eventually added BTG to the D.C. Action.

### 3. No Genuine Dispute of Material Fact Exists That Capitol Forum Knew Sufficient Facts About the Infringement in October 2021

Capitol Forum knew that a subscriber was sending the articles to Market Securities as of October 2021. As a matter of law, under the Second Circuit discovery rule, the statute of limitations began to run in October 2021.

Specifically, Capitol Forum admits that from 2016-2019, it discovered significant infringement by its financial industry subscribers, including (1) a subscriber posting publications in an online chatroom, (2) a subscriber forwarding publications to other financial firms, and (3) a subscriber routinely forwarding publications to a reporter at Bloomberg, who republished the articles. Dkt. 89 at 3-4. The Bloomberg infringement involved over 150 articles forwarded to Bloomberg by just one Capitol Forum subscriber. *See* Def.'s Ex. 2 (Dkt. 76-2), 30(b)(6) Dep. Tr. at 91:3-92:14; 97:3-18; Def.'s Ex. 8 (Dkt. 76-8).

Capitol Forum also admits that in October 2021, it learned of the infringement here because "a Capitol Forum subscriber reported to Capitol Forum that he had been receiving summaries of its copyrighted articles from an investment firm named Market Securities LLC, which was not a Capitol Forum subscriber." Dkt. 89 at 5. Indeed, Capitol Forum "assumed that one of its subscribers had forwarded" the publications to Market Securities. *Id.* It thus "engaged counsel to

6

investigate the matter," and "[o]n October 27, 2021, counsel sent a cease-and-desist letter" to Market Securities, demanding it "preserve all documents pertaining to its receipt and transmission of Capitol Forum's copyrighted material." *Id.* at 5-6. Just one day after being alerted to the infringement, Capitol Forum's CEO, Teddy Downey, concluded that Market Securities "started 'recapping' our articles starting in february" or earlier. Def.'s Ex. 10 at 1 (Dkt. 76-10).

In sum, it is undisputed that, as of October 2021, Capitol Forum knew that its copyrights were infringed and that someone from its limited pool of subscribers was sharing unauthorized copies with Market Securities.

Capitol Forum expends much energy detailing Market Securities obstructive acts—from refusing to surrender BTG's name to deleting chat records—to explain why it only added BTG as a defendant in the D.C. Action on June 16, 2023. But that is beside the point because, as a matter of law, the statute of limitations clock began ticking in October 2021.

**B.    The December 2024 Complaint in This Case Was Untimely, and the Claims Are Barred by the Statute of Limitations**

Capitol Forum failed to act diligently when—without any explanation—it waited for months to file its action against BTG in New York after the statute of limitations had run. To be sure, Capitol Forum timely filed the D.C. Action against BTG on June 16, 2023—within the three-year statute of limitations. But after the D.C. Action was dismissed, Capitol Forum failed to file in the proper forum—New York—by the October 2024 deadline.

Although, relying on nothing but complaint allegations, Capitol Forum argues the statute should be equitably tolled for "BTG's fraudulent concealment," equitable tolling does not apply. Capitol Forum is "entitled to equitable tolling' only if [it] shows (1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quotation omitted).

7

Nothing was concealed from Capitol Forum between August 2024 when the D.C. Action was dismissed and December 2024 when it filed this case. Not "extraordinary circumstances stood in the way" of timely filing this case—just lack of diligence. The claims are thus barred.

1. **Equitable Tolling Applies Only in "Rare and Exceptional Circumstances"**

Equitable tolling is "only appropriate in rare and exceptional circumstances." *Perez v. Harbor Freight Tools*, 698 F. App'x 627, 628 (2d Cir. 2017). The Second Circuit looks at whether the party "acted with reasonable diligence during the time period [it] seeks to have tolled" and "*proved* that the circumstances are so extraordinary that the doctrine should apply." *Id.* (emphasis added). The term "extraordinary" refers to the "severity of the obstacle impeding compliance with a limitations period." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021); *see also Jackson v. Destiny's Child*, No. 1:23-CV-10507 (LTS), 2024 U.S. Dist. LEXIS 13019, at *11-13 (S.D.N.Y. Jan. 18, 2024) (refusing to apply equitable tolling where plaintiff failed to show he diligently pursued his claims during his multiple hospitalizations or that he was fully incapacitated to a point where he could not pursue them). If a plaintiff "acting with reasonable diligence, could have filed on time notwithstanding," equitable tolling does not apply. *Smalls*, 10 F.4th at 145 (citing *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010)); *see also Gager v. Principi*, 300 F. App'x 30, 30-31 (2d Cir. 2008) (missing 90-day filing deadline was not exceptional circumstance because "while Gager argues that she was overwhelmed by her family difficulties, she did not allege that she suffered from a mental condition that prevented her from pursuing her claim"). While the result may be harsh, the "harshness . . . is largely a self-inflicted wound." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 13 (2d Cir. 1996) (quotation omitted). And it is warranted to avoid "undesirable opportunities for the endless harassment of parties through serial litigation." *Higgins v. N.Y. Stock Exch., Inc.*, 942 F.2d 829, 833 (2d Cir. 1991). Capitol Forum has not established any extraordinary

8

circumstance preventing it from filing a timely claim after BTG was dismissed from the D.C. Action.

### 2. Capitol Forum Failed to Act Diligently When It Waited for Months to Re-File This Action Until After the Statute of Limitations Had Expired

Capitol Forum's New York action was filed in December 2024, which is two months after the statute of limitations lapsed. Because Capitol Forum has offered no reason—much less one that would amount to "extraordinary circumstances"—for failing to timely file the case in New York, its claims are time-barred.

Where a party pursues a prior claim in the wrong forum and then, after the first matter is dismissed, fails to sue on time, equitable tolling offers no refuge where the party fails to act with reasonable diligence. *Johnson*, is instructive; there, the district court dismissed antitrust claims on the statute-of-limitations grounds. 86 F.3d at 10. The plaintiffs appealed, claiming the district court erred in refusing to toll the limitations period for the time between two separately-filed actions. *Id*. The first action was dismissed without prejudice because an agency had the primary jurisdiction over the claims. *Id*. The second action was filed months after that agency had rendered a decision. *Id*. The Second Circuit ruled that—after an action has been dismissed without prejudice—"a plaintiff's subsequent court filing is vulnerable to a time-bar because the dismissal in and of itself does not halt the running of the limitations period, even though designated to be without prejudice." *Id*. at 11. Equitable tolling only "provides a plaintiff with just so much extra time as he needs, despite all due diligence on his part, to traverse court-imposed administrative hurdles and file a new federal claim." *Id*. (quotation omitted). Because the plaintiffs' months-long delay was "excessive and occasioned by plaintiffs' own lack of diligence," the Second Circuit affirmed the dismissal, noting "[a] reasonable plaintiff would have returned to federal court sooner." *Id*. at 12-13.

*Johnson* is no lone precedent. The Second Circuit has time and time again refused to apply equitable tolling where plaintiffs were not reasonably diligent. In *Maurizio v. Goldsmith*, 230 F.3d 518, 519 (2d Cir. 2000), the Second Circuit found plaintiff's Copyright Act claims were properly dismissed where she filed a related state suit five years before the federal action and those claims were dismissed as preempted by the Copyright Act. The court rejected plaintiff's argument that she mistakenly filed her Copyright Act claims in state court, and that the statute of limitations should therefore be tolled while the state case was pending. *Id*. at 520. Because the plaintiff failed to assert her Copyright Act claims until five years after the claims accrued, the claims were time-barred. *Id*. at 520-21. In *Kregos v. AP*, 3 F.3d 656, 661 (2d Cir. 1993), the court refused to toll the statute of limitations where the copyright claim was five months too late. The plaintiff argued that it delayed bringing suit because it was relying on certain representations by opposing counsel regarding the copyright. *Id*. at 662. The Second Circuit found that this reliance was unreasonable and unjustified, and the claim was thus time-barred. *Id*.

Here, by August 10, 2024, when the D.C. Action was dismissed, Capitol Forum had long known of BTG's identity. Capitol Forum proves this undisputed point in its own brief. *Supra* Section A.3. In October 2021, Capitol Forum knew "without any doubts" that a subscriber was sharing the publications with Market Securities. Def.'s Ex. 11 (Dkt. 76-11). That is when the statute of limitations started running. In discovery, Capitol Forum learned that Ms. Suarez shared certain publications with Market Securities. Def's Ex. 2 at 115:12-21 (Dkt. 76-2). On June 16, 2023, Capitol Forum amended its D.C. complaint to add BTG. Def's Ex. 15 at 1 (Dkt. 76-15). The D.C. Action, however, was dismissed for lack of personal jurisdiction over BTG. No dispute exists that Capitol Forum knew of BTG's identity but let the October 2024 deadline pass.

Capitol Forum muddies the water by claiming that "BTG's fraudulent concealment of its identity as the culprit who provided Capitol Forum articles to Market Securities" supports equitable tolling. Dkt. 89 at 25. But at best, its claims relate only to Ms. Donaker's and Ms. Suarez's conduct in 2020-2021. Capitol Forum did not allege that BTG took any action to conceal its identity during the D.C. Action. Nor can it. BTG was timely added as a party in the D.C. Action.

In any event, nothing was "concealed" from Capitol Forum in August-December 2024. Capitol Forum simply dropped the ball and failed to sue BTG on time. Because the only thing that prevented Capitol Forum from suing BTG before the statute of limitations had lapsed in October 2024 was its own lack of diligence, equitable tolling does not apply.

### C.    Objections to the Downey Declaration

Under Rule 56(c), BTG objects to the declaration of Theodore Downey (Dkt. 91) because it is not made on personal knowledge, relies on inadmissible hearsay, and contains improper expert testimony. Mr. Downey, a Capitol Forum employee, misstates BTG's interrogatory responses (¶7); offers improper lay opinion on SEC rules (¶8), when Capitol Forum has already submitted an SEC expert declaration; and cites numerous incomplete hearsay quotations to Bloomberg chat messages produced by Market Securities (¶¶11-13, 21, 36, and 38).

## III.    CONCLUSION

BTG's Motion for Summary Judgment should be granted.

Dated: November 12, 2025

Respectfully Submitted,

*/s/ Charles S. Baker*
Charles S. Baker *(pro hac vice)*
charles.baker@troutman.com
Ryan E. Dornberger *(pro hac vice)*
ryan.dornberger@troutman.com
Emma A. Bennett *(pro hac vice)*
emma.bennett@troutman.com
TROUTMAN PEPPER LOCKE LLP
600 Travis St., Suite 2800
Houston, Texas 77002
(713) 226-1200 Telephone
(214) 223-3717 Facsimile

Mark Hannemann
mark.hannemann@troutman.com
TROUTMAN PEPPER LOCKE LLP
200 Vesey St., 20th Floor
New York, NY 10281
(212) 415-8600 Telephone
(212) 303-2754 Facsimile

Glenn Pudelka *(pro hac vice)*
glenn.pudelka@troutman.com
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
(617) 239 - 0100 Telephone
(617) 227 - 4420 Facsimile

*/s/ Jonathan Polkes*
Jonathan Polkes
Rosie Norwood-Kelly (*pro hac* vice)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819 8200
Facsimile: (212) 354-8113
jonathan.polkes@whitecase.com
rosie.norwood-kelly@whitecase.com

Anna B. Naydonov (*pro hac* vice)
WHITE & CASE LLP
701 Thirteenth Street N.W.
Washington, D.C. 20005

12

Telephone: (202) 637 6197
Facsimile: (202) 639 9355
anna.naydonov@whitecase.com

**COUNSEL FOR DEFENDANT BTG PACTUAL ASSET MANAGEMENT US, LLC.**

13

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1(c), this reply complies with the word count limit of 3,500 words because it contains 3,498 words, including any footnotes and endnotes, according to the word-processing system used to prepare this document, excluding parts of the document that are exempted by Local Civil Rule 7.1(c) (the caption, index, table of contents, table of authorities, signature blocks, and any required certificates).

/s/ *Charles S. Baker*
Charles S. Baker

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which subsequently sent the document via e-mail to all counsel of record.

/s/ *Charles S. Baker*
Charles S. Baker