[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DBW PARTNERS, LLC d/b/a THE CAPITOL FORUM,<br><br>*Plaintiff,*<br><br>v.<br><br>BTG PACTUAL ASSET MANAGEMENT US, LLC,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:24-cv-09836-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BTG PACTUAL ASSET MANAGEMENT US, LLC'S MOTION FOR SUMMARY JUDGMENT**

[redacted]

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION .................................................. 1

II. NATURE AND STAGE OF THE PROCEEDINGS .................................................. 2

III. STATEMENT OF THE ISSUES TO BE RULED ON .................................................. 2

IV. SUMMARY OF THE ARGUMENT .................................................. 2

V. STATEMENT OF RELEVANT FACTS .................................................. 3

A. Capitol Forum's Subscribers .................................................. 3

B. Capitol Forum's Experience with Copyright Infringement by Its Financial Industry Subscribers .................................................. 4

C. The Alleged Copyright Infringement and the D.C. Action .................................................. 5

D. Capitol Forum's Dismissal from D.C. Action and Re-Filing this Action .................................................. 6

VI. LEGAL STANDARDS .................................................. 7

A. Summary Judgment .................................................. 7

B. Statute of Limitations .................................................. 7

VII. ARGUMENT .................................................. 8

A. The Discovery Rule is Premised on Knowledge of the Injury .................................................. 9

1. The Second Circuit's Adoption of the Discovery Rule for Copyright Infringement .................................................. 10

B. Plaintiff Need Only Discover the Critical Facts to Start the Statute .................................................. 11

1. The Knowledge of the Wrongdoer's Identity is Not Required .................................................. 13

C. No Genuine Issue of Fact Remains for the Jury .................................................. 15

D. Capitol Forum's Claims are Time Barred Because Capitol Forum Discovered the Injury and Its Likely Cause More Than Three Years Before Filing Suit .................................................. 19

VIII. Alternatively, Application of the Discovery Rule is Not Warranted in Copyright Claims .................................................. 21

IX. CONCLUSION .................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974)....................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................7

*Corcoran v. New York Power Auth.*,
202 F.3d 530 (2d Cir. 1999)....................11, 12, 20, 22

*Gabelli v. S.E.C.*,
568 U.S. 442 (2013)....................9

*Kronisch v. United States*,
150 F.3d 112 (2d Cir. 1998)....................11, 20

*Kwan v. Schlein*,
634 F.3d 224 (2d Cir. 2011)....................13

*Leon v. Murphy*,
988 F.2d 303 (2d Cir. 1993)....................7

*Merch. v. Levy*,
92 F.3d 51 (2d Cir. 1996)....................13

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)....................9, 10

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
112 F.4th 144 (2d Cir. 2024) ....................2, 7, 10, 13

*Monsarrat v. Zaiger*,
303 F. Supp. 3d 164 (D. Mass. 2018) ....................14, 15, 21

*Morse v. Univ. of Vermont*,
973 F.2d 122 (2d Cir. 1992)....................12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....................7, 22

[redacted]

*Psihoyos v. John Wiley & Sons, Inc.*,
748 F.3d 120 (2d Cir. 2014)....7, 10, 13

*Rotella v. Wood*,
528 U.S. 549 (2000)....11

*Rotkiske v. Klemm*,
589 U.S. 8 (2019)....22

*Seck v. Information Management Network*,
697 F. App'x 33 (2d Cir. 2017) ....12

*Sewell v. Bernardin*,
795 F.3d 337 (2d Cir. 2015)....13, 14, 21

*Singleton v. Clash*,
951 F. Supp. 2d 578 (S.D.N.Y. 2013)....9

*Sohm v. Scholastic Inc.*,
959 F.3d 39 (2d Cir. 2020)....10

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001)....22

*Warner Chappell Music, Inc. v. Nealy*,
601 U.S. 366 (2024)....10, 22

**Federal Rules**

Fed. R. Civ. P. 56 (a) ....7

**Federal Statutes**

17 U.S.C. § 507....7, 9, 10

## I. INTRODUCTION

All claims are time-barred in this lawsuit because Capitol Forum filed suit on December 16, 2024, more than three years after learning of the alleged infringement. To be timely under the three-year statute of limitations, the claims must have accrued on or after December 16, 2021. But Capitol Forum was notified of the infringement in October 2021, when a subscriber alerted Capitol Forum to the related infringement by third party Market Securities. Shortly thereafter, on October 27, 2021, Capitol Forum sent Market Securities a cease-and-desist letter to stop the alleged infringement. After sending the letter, Capitol Forum sued Market Securities in D.C. (and even added BTG as a party to that lawsuit), but Capitol Forum was not diligent in pursuing its claims against BTG because it failed to refile this lawsuit within the three-year statute of limitations after BTG was dismissed from the D.C. action.

The question before the Court is whether Capitol Forum's knowledge of the infringement by one of its financial industry subscribers is enough to trigger the statute of limitations without specific knowledge of BTG as one of the alleged infringers. The Second Circuit has repeatedly stated that the discovery rule for statutes of limitations run upon knowledge of the injury, *e.g. the infringement*, but these cases do not differentiate between knowledge of the infringement and the alleged infringer. In most copyright cases, discovery of the infringement is simultaneous with discovery of the alleged wrongdoer, and there is limited case law discussing accrual of the claims when discovery of the alleged infringer is not simultaneous. At least one district court in Massachusetts, as well as an analogous Second Circuit decision under the Computer Fraud and Abuse Act, have said that knowledge of the infringement is sufficient to start the statute of limitations. This interpretation of the discovery rule comports with the application of that rule in other causes of action and should be adopted by this Court under the specific facts of this case.

[redacted]

## II. NATURE AND STAGE OF THE PROCEEDINGS

On December 16, 2024, Capitol Forum brought this lawsuit against Defendant BTG Pactual Asset Management US, LLC (the "Action"). Dkt. 1. Fact and expert discovery are now complete. Dkt. 67. On September 2, 2025, BTG expressed its intent to file the present Motion for Summary Judgment. Dkt. 63. On September 30, 2025, the Court held a pre-motion conference and on October 1, 2025 issued its Order setting the schedule for briefing summary judgment and setting the case for trial on April 27, 2026. Dkt. 69.

## III. STATEMENT OF THE ISSUES TO BE RULED ON

Whether the discovery rule triggered the three-year statute of limitations for all claims against BTG—a Capitol Forum subscriber—in October 2021, when Capitol Forum learned enough of the critical facts that it had been injured by one of its subscribers, based on (1) its actual knowledge that Market Securities, who was not a Capitol Forum subscriber, was republishing Capitol Forum's copyrighted content, and (2) its previous experience of copyright infringement by its financial industry subscribers, where Capitol Forum was "without any doubts" one of its financial industry subscribers was providing its copyrighted material to Market Securities?

## IV. SUMMARY OF THE ARGUMENT

In this Circuit, the statute of limitations for copyright claims are triggered by discovery of the injury, e.g. the infringement. *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024). In October 2021, it is undisputed that Capitol Forum knew of the infringement alleged in this Action, namely, that one of its subscribers was furnishing publications to Market Securities without its authorization. Accordingly, the three-year statute of limitations was triggered in October 2021, yet Capitol Forum waited to file the present Action until December 2024—outside the statute of limitations and thus, the asserted claims are now time barred.

## V. STATEMENT OF RELEVANT FACTS

### A. Capitol Forum's Subscribers

Capitol Forum, a media company established in 2012, publishes electronic publications pertaining to large corporate mergers and acquisitions involving publicly traded companies. Ex. 2, 30(b)(6) Dep. Tr. at 10:11-11:12. [1] It has also broadened its scope to include additional topics, like antitrust review and corporate investigations by government agencies. *Id*. The full text of Capitol Forum's publications used to be sent to subscribers via e-mail, but today subscribers only receive an e-mail with the first few lines of the publication (and a link to access the full publication). *Id.* at 55:1-56:21; 41:2-11. When accessing the full text through the e-mailed link, a watermark of the subscriber's e-mail address is displayed across the publication. *Id.* at 42:19-43:3.

Capitol Forum reporters draft publications by examining public merger announcements, investigating on the Hill, and interviewing sources; those publication are then shared with its subscribers. Ex. 3, Downey Dep. Tr. at 19:3-11. Consequently, starting in 2012, one of their target subscribers were merger arbitrage investors. *Id.* at 19:12-20:6. The merger arbitrage investors and other financial firms are particularly interested in reports on mergers and monopoly issues, which impact their strategic investments in the market. *Id.* at 19:12-20:6; Ex. 2, 30(b)(6) Dep. Tr. at 76:5-12. Between the alleged infringement period, March 2020 to December 2021, Capitol Forum had between 71 and 88 of these financial industry subscribers. Ex. 4, Downey Dep. Tr. at 107:8-108:2; Ex. 5. These subscribers contributed the "vast majority" of Capitol Forum's revenue. Ex. 4, Downey Dep. Tr. at 114:10-13.

---

[1] All Exhibits referenced herein are attached to the Declaration of Ryan E. Dornberger in support of this Motion for Summary Judgment.

[redacted]

### B. Capitol Forum's Experience with Copyright Infringement by Its Financial Industry Subscribers

Capitol Forum has long grappled with incidents of its financial industry subscribers sharing its copyrighted publications without authorization. For example, on August 24, 2016, Capitol Forum became aware of a financial industry subscriber who was sharing Capitol Forum publications in an online chatroom. Ex. 2, 30(b)(6) Dep. Tr. at 103:16-104:10. Upon discovery, Trevor Baine, now Chief Financial Officer of Capitol Forum, remarked that he is "generally opposed to going after people for forwarding around" publications because doing so could be detrimental to Capitol Forum's business. *Id.* at 104:11-105:8; Ex. 6.

Not even a year later, in July 2017, Capitol Forum became aware of another financial industry subscriber who was sending Capitol Forum publications to "several other financial firms." Ex. 2, 30(b)(6) Dep. Tr. at 99:4-21; Ex. 7. In response, Teddy Downey, Chief Executive Officer of Capitol Forum, stated in an email dated July 6, 2017: "[I]'m getting pretty annoyed at how easy it is for wall street to steal our stuff at this point[.]" Ex. 7. At that time, Capitol Forum was regularly hearing that its financial industry subscribers, including financial firms, were sharing its copyrighted publications. Ex. 2, 30(b)(6) Dep. Tr. at 101:9-102:2; Ex. 7. Teddy Downey suggested to his team that the unauthorized sharing could be an opportunity to sell even more subscriptions by targeting recipients of the unauthorized sharing with sales proposals. Ex. 2, 30(b)(6) Dep. Tr. at 102:19-103:11; Ex. 7.

As yet another example, Capitol forum discovered that between 2016 and 2017, a financial industry subscriber sent as many as 150 Capitol Forum publications to a Bloomberg reporter, who was then reposting portions in their own publications. Ex. 2, 30(b)(6) Dep. Tr. at 91:3-92:14; 97:3-18; Ex. 8. While Capitol Forum did not file a lawsuit against its subscriber, however Capitol Forum did file a lawsuit against Bloomberg for copyright infringement. Ex. 2, 30(b)(6) Dep. Tr. at 97:3-

[redacted]

98:5; Ex. 3 at 47:2-4. That lawsuit was subsequently settled, with Bloomberg making a confidential payment to Capitol Forum to end the lawsuit. Ex. 2, 30(b)(6) Dep. Tr. at 111:19-112:12.

**C. The Alleged Copyright Infringement and the D.C. Action**

On October 25, 2021, and after at least three past instances of copyright infringement by its financial industry subscribers, a subscriber informed Capitol Forum that Market Securities was regularly republishing the content of its publications. Ex. 10; Ex. 3, Downey Dep. Tr. at 72:22-73:5. Between October 25, 2021, and October 27, 2021, that subscriber forwarded at least three instances of suspected republishing by Market Securities to Teddy Downey, Capitol Forum's Chief Executive Officer. Ex. 10; Ex. 11.

Upon reviewing the Market Securities publications and noting their rapid republication, Capitol Forum's Chief Revenue Officer, Josep Alba, immediately understood "without any doubt" that one of its financial industry subscribers was again sharing publications without authorization, and he informed Capitol Forum's leadership of his conclusions shortly thereafter on October 27, 2021. Ex. 11. In response, Capitol Forum sent a cease-and-desist letter to Market Securities on October 27, 2021, which culminated in a copyright infringement lawsuit against Market Securities in the District of D.C. filed on May 13, 2022 ("D.C. Action"). Ex. 3, Downey Dep. Tr. at 87:11-88:4; Ex. 9; Ex. 12. The publications alleged to be infringed in the D.C. Action are the same alleged here. Consistent with its knowledge of the infringement by a subscriber in October 2021, Capitol Forum alleged contributory infringement against Market Securities for inducing a subscriber to send the copyrighted publications. Ex. 12 ¶ 46 (stating claim for contributory infringement "by encouraging, inducing, and causing Capitol Forum subscribers to provide such reports or the contents of those reports to it."); *see also id.* ¶ 22 ("Market Securities has, on information and belief, induced one or more Capitol Forum subscribers to transmit the Capitol Forum publications to it . . .").

Through discovery in the D.C. Action, Capitol Forum learned that Market Securities was in possession of three Capitol Forum publications with a BTG e-mail address added as a watermark to the publications. *See, e.g.*, Ex. 2, Downey Dep. Tr. at 115:12-21. On June 16, 2023, Capitol Forum amended its complaint to add BTG as a party to the copyright infringement allegations, alleging it was one source of publications to Market Securities. Ex. 15 at 1. The court permitted the amendment and BTG was added on September 11, 2023. *See id*.

**D. Capitol Forum's Dismissal from D.C. Action and Re-Filing this Action**

BTG moved to dismiss for lack of personal jurisdiction and improper venue. Ex. 13. BTG alleged and subsequently proved that it was not subject to general jurisdiction in D.C., nor did it have a substantial connection with D.C. for specific jurisdiction. Ex. 13 at 6. Notwithstanding the lack of personal jurisdiction, BTG requested the claims be transferred to this district in lieu of dismissal. Ex. 13 at pg. 23-24. BTG even argued that transfer was in the interest of justice, would save Capitol Forum time and expense of refiling the case, and agreed that transfer would not prejudice BTG. Ex. 13 at pg. 23-24.

Despite BTG's willingness to accept transfer to this District, Capitol Forum objected to the transfer. Ex. 15 at 33 n.5. On August 10, 2024, the D.C. Court found it lacked personal jurisdiction over BTG and dismissed it from the suit. Ex. 15. Because Capitol Forum refused to consent to the transfer, the Court did not transfer the claims to the Southern District of New York. Ex. 15 at 33 n.5. On December 16, 2024, **more than four months after BTG was dismissed from the D.C. Action**, Capitol Forum filed this lawsuit. Dkt. 1. The causes of action here, the alleged infringement of 136 publications between 2020 to 2021, stem from the same actions alleged in the D.C. Action—the alleged unauthorized sharing of publications to Market Securities. Ex. 14 at Interrogatory No. 1 & Ex. A.

## VI. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment should be granted when "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the nonmoving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (quoting *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989)). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Statute of Limitations

A plaintiff must bring a copyright infringement action "within three years after the claim accrued." 17 U.S.C. § 507(b); *see Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014) ("Under the [Copyright] Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence."). This Circuit has adopted the discovery rule to determine when a copyright infringement claim accrues. The rule provides that a claim accrues "when a diligent plaintiff discovers or should have discovered the injury (e.g., an infringement)." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014) ("[A]n infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement (the so-called 'discovery rule').").

## VII. ARGUMENT

In almost every application of the discovery rule for countless causes of action, a plaintiff does not need to know every detail of its potential claim or the exact identity of the wrongdoer to trigger the applicable statute of limitations. Instead, knowledge of the critical facts of the injury is sufficient to trigger the limitations period, even where those critical facts leave doubt about who is liable for the injury. An instructive case from the District of Massachusetts has held that actual or constructive discovery of the infringement starts the three-year clock, even if the plaintiff learns the identity of the infringer later. This approach is in line with both the First and Second Circuit's application of the discovery rule in other causes of action, including in computer-related torts under the ACT, and should govern how the Court applies the discovery rule in this case.

By at least October 27, 2021, Capitol Forum discovered that one or more of its limited number of financial industry subscribers was sharing unauthorized copies of its copyrighted publications with Market Securities. At that time, Capitol Forum knew enough critical facts to trigger the statute, both the injury (the infringement of its copyrighted publications) and that it was caused by one of its subscribers. This actual knowledge of critical facts was sufficient to trigger the statute of limitations under the discovery rule. Indeed, Capitol Forum subsequently sued Market Securities and, through discovery, identified BTG as one of the allegedly infringing subscribers. However, Capitol Forum was not diligent in pursuing its claims against BTG because it objected to the transfer of the D.C. Action to this district and waited until December 2024 to file the present action after BTG was dismissed from the previous lawsuit—more than three years after it first discovered the infringement. Because the application of the discovery rule does not require knowledge of the specific infringer's identity to start the limitations period, and Capitol Forum had all critical facts necessary to investigate and pursue its claims by at least the end of October 2021, its claims against BTG here, filed more than three years later, are time barred.

### A. The Discovery Rule is Premised on Knowledge of the Injury

Since 1957, the statute of limitations under the Copyright Act has been three years. *See* 17 U.S.C. § 507. Statutes of limitation, in general, serve to protect defendants from prosecution of stale claims and to preserve a sense of finality for defendants. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Statutes of limitations provide "essential fairness to defendants" by "barring a plaintiff who 'has slept on his rights.'" *Id.* Once the statute of limitations begins, the plaintiff must diligently investigate its claims and decide whether to bring a lawsuit. If it fails to do so within the prescribed time period, the plaintiff has given up their right to sue for that claim.

The copyright statute of limitations period reads in full: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507. Generally, a cause of action accrues at the time the plaintiff is injured. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 644 (2010) ("A cause of action accrues once a plaintiff has a 'complete and present cause of action.'"). But "[i]n contrast to the standard rule, the discovery rule provides that 'accrual is delayed until the plaintiff has discovered his cause of action.'" *Singleton v. Clash*, 951 F. Supp. 2d 578, 585 (S.D.N.Y. 2013) (quoting *Gabelli v. S.E.C.*, 568 U.S. 442, 449 (2013)).

The discovery rule was first adopted as an exception for fraud cases, where the injury is intentionally concealed from the plaintiff. *See Gabelli*, 568 U.S. at 449.

> The discovery rule exists in part to preserve the claims of victims who do not know they are injured and who reasonably do not inquire as to any injury. Usually when a private party is injured, he is immediately aware of that injury and put on notice that his time to sue is running. But when the injury is self-concealing, private parties may be unaware that they have been harmed.

*Id.* at 450. That is, the discovery rule was created for plaintiffs who discover that they were injured after the injury occurred. *Id.*

[redacted]

Since first being used in cases of fraud, the discovery rule has been applied to most situations other than fraud, including toxic torts and medical malpractice. Legislators have even codified the discovery rule in certain statutes. *Merck & Co. v. Reynolds*, 559 U.S. 633, 645 (2010). "And when they have done so, state and federal courts have typically interpreted the word to refer not only to actual discovery, but also to the hypothetical discovery of facts a reasonably diligent plaintiff would know." *Id.* (collecting cases).

**1. The Second Circuit's Adoption of the Discovery Rule for Copyright Infringement**

In 2014, the Second Circuit officially adopted the discovery rule for federal copyright infringement actions. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014). Before 2014, the Second Circuit had already employed the discovery rule for co-ownership claims of copyrights under 17 U.S.C. § 507(b). *Id.* The court affirmatively concluded that "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Id.* at 125. Despite questions by some that the discovery rule cannot be imputed into every federal statute, including justices on the Supreme Court, the Second Circuit has continued to apply the discovery rule to copyright infringement actions. *See e.g.*, *Sohm v. Scholastic Inc.*, 959 F.3d 39, 50 (2d Cir. 2020) ("The Supreme Court, however, has not overruled *Psihoyos*, either implicitly or explicitly, and therefore we must continue to apply the discovery rule."), *abrogated on other grounds by Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024); *see, e.g.*, *Warner Chappell*, 601 U.S. at 375 (Gorsuch, J., dissenting) ("There is little reason to suppose the Copyright Act's provisions at issue in this case contemplate any departure from the usual [injury accrual] rules."); *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024) (stating that under the discovery rule "the claim accrues when a diligent plaintiff discovers or should have discovered the injury (*e.g.*, an infringement).").

**B. Plaintiff Need Only Discover the Critical Facts to Start the Statute**

A plaintiff need not discover every facet of its cause of action to trigger the discovery rule. The plaintiff only needs to discover the critical facts of the injury. "Discovery of the 'critical facts' of injury and causation is not an exacting requirement," instead it only requires:

> [K]nowledge of, or knowledge that could lead to, the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it. . . . [A] plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.

*Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) (citation omitted); *Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999); *see also Rotella v. Wood*, 528 U.S. 549, 558 (2000) (rejecting pattern discovery rule for RICO claims because "[b]y tying the start of the limitations period to a plaintiff's reasonable discovery of a pattern rather than to the point of injury or its reasonable discovery, the rule would extend the potential limitations period for most civil RICO cases well beyond the time when a plaintiff's cause of action is complete"); *see, e.g.*, *id.* at 555 ("But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.").

The precedent in this circuit highlights the importance of knowledge of the injury. In *Corcoran*, for example, a claim for nuclear radiation poisoning accrued upon diagnosis of cancer that may have been caused by radiation exposure (even without knowledge that the injured had been exposed to radiation by his employer). 202 F.3d at 544. The injury in *Corcoran* occurred while a millwright was working on a steam turbine at a nuclear power plant for less than three months in 1985. *Id.* at 533. That same year, "the steam generator tubes that carried radioactive water leaked radioactive particles and substances," and the plaintiff alleged that neither his employer Westinghouse nor the New York Power Authority ever alerted him "to the presence of

[redacted]

radiation nor provided him with protective clothing or radiation monitoring equipment." *Id.* Seven years later in 1992, the injured worked was diagnosed with leukemia and was informed by his doctor "that exposure to radiation was a possible cause." *Id.* at 533-34. The worker attempted to investigate whether his temporary assignment at the nuclear power plant exposed him to radiation, including by asking coworkers at the plant about radiation leaks. *Id.* at 534. After the worker succumbed to leukemia in 1993, his estate sought legal advice in early 1994. *Id.* Lawyers investigated the claims, identified the leak of radioactive material in the steam generator as the likely cause of the cancer, and sued the employer and the power authority. *Id.*

Despite not having actual knowledge of the radiation leak that likely caused his injuries, the Second Circuit found that the worker's injury claim accrued no later than his cancer diagnosis in 1992 because "Mr. Corcoran possessed sufficient information to know the critical facts of his claim." *Id.* at 543-44. After being diagnosed with leukemia, the evidence showed that "he discussed with his ex-wife the possibility of bringing a radiation claim against NYPA and Westinghouse" and he asked a coworker "to conduct an informal investigation." *Id.* at 543. The worker's claim thus accrued upon his leukemia diagnosis "[b]ecause Mr. Corcoran knew that his leukemia may have been caused by radiation exposure." *Id.* at 544.

Focus on the injury is no more apt than in discrimination cases, like employment discrimination. In those cases, discrimination claims accrue upon discovery of the injury, e.g. the termination of employment, and not discovery that the termination was done with discriminatory intent. *Seck v. Information Management Network*, 697 F. App'x 33, 34 (2d Cir. 2017) ("A cause of action for employment discrimination accrues from the moment of the discrete act constituting an unlawful employment practice, not from when the discriminatory motive is discovered."); *see also Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) ("Thus, 'the timeliness of a

[redacted]

discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision.'"). Similarly, the Second Circuit's recitation of the discovery rule for copyright co-ownership claims is equally instructive. "A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merch. v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (*citing Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.1992)); *see also Kwan v. Schlein*, 634 F.3d 224, (2d Cir. 2011) ("Under this rubric, any number of events can trigger the accrual of an ownership claim, including '[a]n express assertion of sole authorship or ownership.'"). Because "[a] co-author knows that he or she jointly created a work from the moment of its creation," *Levy*, 92 F.3d at 56, the only thing left to discover is the disputed ownership.

**1. The Knowledge of the Wrongdoer's Identity is Not Required**

Starting with the Second Circuit's cases on copyright infringement, the discovery rule focuses on the injury, e.g. the infringement, and not the infringer. "[C]opyright infringement claims do not accrue until actual or constructive discovery of the relevant ***infringement***." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (emphasis added; *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024) ("Thus, to be timely, MGP must have been unable, with the exercise of due diligence, to discover ***the infringing activity*** prior to October 12, 2018, three years before the complaint was filed."). While courts in this District have not often dealt with cases where the identity of the wrongdoer is unknown at the time of discovering the infringement, the general discovery rule and two instructive cases show that knowing the specific identity of the wrongdoer is not required to start the statute of limitations.

First, the Second Circuit addressed a similar situation when applying the discovery rule codified within the Computer Fraud and Abuse Act (CFAA) and Stored Communications Act (SCA). *See Sewell v. Bernardin*, 795 F.3d 337 (2d Cir. 2015). In *Sewell*, the plaintiff accused the defendant of violating the CFAA and SCA, which in short, prohibits unauthorized computer

access. *Id.* at 339-40. Both the CFAA's and SCA's text incorporated the discovery rule. The CFAA states that "a civil suit must be filed 'within 2 years of the date of the act complained of or the date of the discovery of the damage.'" *Id.* at 340 (citing 18 U.S.C. § 1030(g)). "'Damage,' in turn, is defined as 'any impairment to the integrity or availability of data, a program, a system, or information.'" *Id.* (citing § 1030(e)). While the SCA states that a lawsuit "must be commenced no 'later than two years after the date upon which the claimant first discovered or had a reasonable opportunity to discover the violation.'" *Id.* (citing 18 U.S.C. § 2707(f)).

The injury in *Sewell* occurred when the defendant gained unauthorized access to the plaintiffs' computer and then altered various account logins. *See id.* at 338-39. The court found that the limitations period began to run when the plaintiff first had a reasonable opportunity to discover that *someone* had accessed her accounts without authorization, despite not knowing the wrongdoer's identity. *Id.* at 340-41. That reasonable opportunity arose when the plaintiff discovered the injury, e.g. that they could not access their AOL account. *Id.* The statute of limitations began to run despite the plaintiff not knowing the identity of the wrongdoer because "further investigation would have led her to [the defendant]." *Id.* at 341. Thus, the lack of knowledge of the identity of the wrongdoer does not alter the discovery rule. The Second Circuit recognized that this may lead to a troubling result where the investigation necessary to uncover the wrongdoer's identity is substantial. *Id.* at 342. Nonetheless, the Second Circuit balances this risk by recognizing that a plaintiff can bring a John or Jane Doe lawsuit to support its investigation into the identity of the person that caused them the injury. *Id.*

And second, the District of Massachusetts applied the discovery rule in an analogous fact pattern as here, finding that knowledge of the infringement is enough to start the statute of limitations, even without knowledge of the infringer. *Monsarrat v. Zaiger*, 303 F. Supp. 3d 164,

166-67 (D. Mass. 2018). Relying on First Circuit cases discussing the discovery rule, the court noted that the statute of limitations begins to run on discovery of the conduct itself, rather than the identity of the alleged infringer. *Id.* at 166 ("The discovery rule provides that a copyright infringement claim 'accrues only when a plaintiff knows or has sufficient reason to know of the <u>conduct</u> upon which the claim is grounded.'") (citing *Warren Freedenfeld Assocs., Inc. v. McTigue*, 531 F.3d 38, 44 (1st Cir. 2008) & *Santa–Rosa v. Combo Records*, 471 F.3d 224, 227–28 (1st Cir. 2006)) (emphasis in original). In *Monsarrat*, the plaintiff took a photograph in 2000 upon graduation from MIT. *Id.* at 165. Someone allegedly altered the photograph to depict the plaintiff in a negative light and posted the photograph anonymously on a website, Encyclopedia Dramatica, in 2008. *Id.* Monsarrat discovered the alleged copyright infringement no later than 2011, when he registered the photograph's copyright and sent a takedown notice to Encyclopedia Dramatica. *Id.*

The first takedown notice succeeded in removing the offending photograph from the website, only for it to show up again in 2012. *Id.* Monsarrat sued in March 2017, almost five years after discovery of the infringement, after subsequent takedown notices were ineffective. *Id.* The court dismissed the claim as untimely, finding that his actual discovery of the infringement was enough to trigger the statute. *Id.* at 166. Even though the plaintiff argued that the true infringer was "inherently unknowable" until after filing a lawsuit, the court held that the discovery rule for copyright infringement is tied to discovery of the infringing conduct and not the infringer. *Id.* at 166-67 (noting that plaintiff "could have filed a timely suit against Encyclopedia Dramatica and John Doe when he learned about the alleged infringement").

### C. No Genuine Issue of Fact Remains for the Jury

The question before the Court is whether Capitol Forum knew or should have known about the infringement before December 2021—not whether Capitol Forum was diligent is pursuing its

[redacted]

claims. If Capitol Forum was put on inquiry notice to investigate the allegations in this lawsuit before December 16, 2021, then the claims must be dismissed as time barred. That is, if the undisputed facts show that Capitol Forum possessed enough information before that date to put it on inquiry notice and start an investigation into its claims here, then this case is time-barred.

The undisputed facts in this case show that Capitol Forum possessed enough critical facts by no later than October 27, 2021 to start the statute of limitations. But even if the Court looks to Capitol Forum's diligence, it can readily conclude that Capitol Forum dropped the ball and was not diligent. Capitol Forum identified BTG as a potential infringer *and* sued BTG within the statutory period, but it ***refused*** BTG's request to transfer the case to this District ***and failed to timely refile*** this lawsuit after the first suit was dismissed. Capitol Forum's failure to timely pursue its claim after being put on inquiry notice is through no fault but its own. To summarize, a timeline showing the undisputed facts putting Capitol Forum on inquiry notice in October 2021 (and its subsequent lack of diligence) is below:

- **2012 –** Capitol Forum was founded and began publishing electronic newsletters pertaining to large corporate mergers and acquisitions involving publicly traded companies. Ex. 2, 30(b)(6) Dep. Tr. at 10:11-11:12. Its financial industry subscribers contributed the "vast majority" of Capitol Forum's revenue. Ex. 4, Downey Dep. Tr. at 114:10-13.
- **2015-2017** – Capitol Forum uncovered numerous instances of its financial industry subscribers forwarding its electronic publications in violations of its copyrights, including one subscriber who sent nearly 150 publications to a Bloomberg reporter that allegedly republished them. In one e-mail on July 6, 2017, discussing one of its subscribers forwarding its publications without authorization, Capitol Forum's CEO wrote that "[I]'m getting pretty annoyed at how easy it is for wall street to steal our stuff at this point." Ex. 7.

[redacted]

Capitol Forum's executive team routinely discussed how to deal with these infringements, with one of its founders "generally opposed to going after people for forwarding around" its publications because doing so could be detrimental to Capitol Forum's business. Ex. 4, Downey Dep. Tr. at 104:11-105:8; Ex. 6. Capitol Forum's CEO even suggested the unauthorized sharing could be an opportunity to sell more subscriptions by targeting recipients of the unauthorized publications with sales proposals. Ex. 2, 30(b)(6) Dep. Tr. at 102:19-103:11; Ex. 7.

- **February 2020 – December 2021:** The dates of the alleged infringement for this lawsuit, which consisted of BTG allegedly sending Capitol Forum's electronic publications to Market Securities. Ex. 14 at Interrogatory No. 1 & Ex. A.
- **October 25-27, 2021:** Capitol Forum is forwarded three publications from Market Securities by a current subscriber and learns that Market Securities was allegedly re-publishing Capitol Forum's copyrighted publications. Ex. 10; Ex. 11. This culminated in Capitol Forum sending Market Securities a cease-and-desist letter on October 27, 2021, which accused Market Securities of "regularly obtaining unauthorized copies of Capitol Forum's copyrighted materials after they are distributed to Capitol Forum subscribers." Ex. 3, Downey Dep. Tr. at 87:11-88:4; Ex. 9. Based on its previous experience with its financial industry subscribers, Capitol Forum's Chief Revenue Officer was "without any doubts" that a current subscriber was furnishing its publications to Market Securities, concluding as much in an e-mail sent on October 27, 2021. Ex. 11. Capitol Forum's financial industry subscribers, like hedge funds, totaled between 71 and 88 companies at this time. Ex. 4, Downey Dep. Tr. at 107:8-108:2; Ex. 5.

[redacted]

- **May 13, 2022:** Capitol Forum initiated a lawsuit against Market Securities in D.C. for copyright infringement, alleging contributory infringement "by encouraging, inducing, and causing Capitol Forum subscribers to provide such reports or the contents of those reports to it." Ex. 12 at ¶ 46; *see also id.* ¶ 22 ("Market Securities has, on information and belief, induced one or more Capitol Forum subscribers to transmit the Capitol Forum publications to it . . .").
- **June 16, 2023:** Capitol Forum moved to amend its complaint in the D.C. action to add BTG as a party to the copyright infringement allegations. Ex. 15 at 1.
- **September 11, 2023:** BTG was added as a party to the D.C. action. *See* Ex. 15 at 1.
- **October 17, 2023:** BTG moved to dismiss the complaint based on a lack of personal jurisdiction in D.C., or in the alternative, to transfer the case against it to the Southern District of New York. Ex. 13.
- **August 10, 2024:** The D.C. court granted the motion to dismiss and denied the transfer to S.D.N.Y. based in part on Capitol Forum's resistance to the transfer. Ex. 15 at 33 n.5.
- **October 27, 2024:** The expiration of the three-year statute of limitations based on the date it sent a cease-and-desist letter to Market Securities, i.e. the date Capitol Forum actually knew of the infringement by one or more of its subscribers sending publications to Market Securities. No later than October 27, 2021, Capitol Forum was placed on inquiry notice. Ex. 3, Downey Dep. Tr. at 87:11-88:4; Ex. 9; Ex. 11.
- **December 16, 2024:** The date Capitol Forum filed the instant case against BTG, more than three years after it was first put on inquiry notice of the alleged infringement. Dkt. 1.

### D. Capitol Forum's Claims are Time Barred Because Capitol Forum Discovered the Injury and Its Likely Cause More Than Three Years Before Filing Suit

As seen in the uncontested facts above, Capitol Forum allowed the 3-year statute of limitations to expire in this case no later than October 27, 2024 because Capitol Forum knew or should have known of the critical facts that formed the basis of the claims by October 27, 2021. Capitol Forum had enough critical facts to start the clock on the three-year statute of limitations when it sent a cease-and-desist letter to Market Securities for the same infringement alleged against BTG here. It is undisputed that by October 27, 2021, Capitol Forum knew of the injury—the alleged unauthorized sharing of copyrighted publications to Market Securities—and the likely cause—one or more of its financial industry subscribers. Ex. 11. Capitol Forum knew Market Securities was obtaining the publications from a subscriber, and on that date, accused Market Securities of "regularly obtaining unauthorized copies of Capitol Forum's copyrighted materials after they are distributed to Capitol Forum subscribers" via a cease-and-desist letter. Ex. 9. Capitol Forum's executive team had even discussed how to deal with infringement from its financial industry subscribers for years, with one suggesting that going after its subscribers was bad for business and another seeing the unauthorized sharing as a business opportunity to go after the recipients of its publications with sales pitches. Ex. 6; Ex. 2, 30(b)(6) Dep. Tr. at 102:19-103:11, 104:11-105:8; Ex. 7.

Based on this prior experience, and after being forwarded three publications from Market Securities on or around October 25-27, 2021, Capitol Forum knew "without any doubts" about the infringement—that one of its subscribers was again sharing its publications, this time with Market Securities. Capitol Forum's Chief Revenue Officer, Josep Alba, stated in an email to the rest of the Capitol Forum executive team on October 27, 2021 that he would "love to know who is sharing that with them as **is a subscriber sharing the whole pieces without any doubts.**" Ex. 11

(emphasis added). Mr. Alba explained that Market Securities would have needed the entire publication based on the content of the Market Securities publication "[a]nd the only way you can get hands on the full article is if somebody that has access to the full article sending it." Ex. 1 at 67:3-17. He was "without any doubts" that a subscriber was sharing the publications with Market Securities because he "struggle[ed] to see a way in which you can have access to a full article if you are not a subscriber of The Capitol Forum." *Id.* at 67:18-68:6.

It is undisputed that in October 2021, Capitol Forum knew enough of the critical facts to protect itself by seeking legal advice, as contemplated by numerous opinions on the discovery rule by the Second Circuit, because Capitol Forum did just that—it sent Market Securities a cease-and-desist letter on October 27, 2021 and subsequently sued Market Securities for copyright infringement on May 13, 2022. Ex. 15 at 1.; *see Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998) ("Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice.") (citation omitted); *Corcoran v. New York Power Auth.*, 202 F.3d 530, 543-44 (2d Cir. 1999).

Mr. Alba's October 27, 2021 email confirmed Capitol Forum's awareness of the infringement by a current subscriber sharing publications with Market Securities. Ex. 11. With between 71 to 88 subscribers, this was a discrete group to investigate within the three-year limitations period. Ex. 4, Downey Dep. Tr. at 107:8-108:2; Ex. 5. Similar to the injured millwright injured by radiation poisoning in *Corcoran* (who only suspected his injury could have come from radiation exposure at his job, but had no knowledge of any exposure), Capitol Forum had all the critical facts to investigate its cause of action in October 2021. That it was put on inquiry notice at that time is underscored by Capitol Forum's own actions—sending a cease-and-desist letter to Market Securities and ultimately suing them in D.C. Ex. 3, Downey Dep. Tr. at 87:11-88:4; Ex.

15 at 1; Ex. 9. The facts here are just like in *Sewell*, where the Second Circuit construed the discovery rule to trigger upon discovery of the injury because a subsequent investigation during the limitations period would lead to the right defendant. *Sewell v. Bernardin*, 795 F.3d 337, 341 (2d Cir. 2015) ("She had such an opportunity [to investigate her claim] as soon as she discovered that she could not obtain access to that account because her password had been 'altered' inasmuch as, accepting her other allegations as true, further investigation would have led her to Bernardin."). And just like in *Sewell*, where the court reflected that a plaintiff could utilize a John or Jane Doe lawsuit to identify the wrongdoer, *see id.*, here Capitol Forum effectively did the same by using its lawsuit against Market Securities to aid its investigation into the unknown infringer. Capitol Forum had the option to employ a John or Jane Doe designation as a placeholder for the unknown subscriber infringer in the D.C. Action, yet it chose not to.

Most on point is *Monsarrat*, where the court faced a similar situation and held the limitations period starts upon discovering the infringement irrespective of knowledge of the infringer. *Monsarrat*, 303 F. Supp. 3d 166-67. In summary, the discovery rule triggered the three-year statute of limitations in this case in October 2021, when Capitol Forum knew enough of the critical facts of its claim to begin its investigation. It did just that, suing Market Securities (and adding BTG as a party) in the D.C. Action. But Capitol Forum failed to show jurisdiction over BTG in D.C. and refused BTG's request to transfer the case to this District. Furthermore, after BTG was dismissed from the D.C. Action on August 10, 2024, Capitol Forum waited more than four months and until after the statute of limitations had expired to refile its claims in this Court.

## VIII. Alternatively, Application of the Discovery Rule is Not Warranted in Copyright Claims

Should the Court hold that the discovery rule was not triggered in this case in October 2021, despite Capitol Forum being on inquiry notice of the infringement by no later than October

[redacted]

27, 2021, BTG respectfully argues in the alternative that the discovery rule is unworkable and could not have been intended by Congress' omission of the rule in the copyright statute. As the Supreme Court remarked in 2014, a copyright infringement claim accrues under the traditional interpretation of claim accrual "when [a] plaintiff has a complete and present cause of action." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014) (citation omitted). "A copyright claim thus arises or 'accrue[s]' when an infringing act occurs." *Id.* The Court has also routinely cautioned against adopting discovery rules into federal statutes. *Rotkiske v. Klemm*, 589 U.S. 8, 14-15 (2019) (rejecting discovery rule in Fair Debt Collection Practices Act because limitation period ran when the "violation occurs," finding that "[i]t is not our role to second-guess Congress' decision to include a 'violation occurs' provision, rather than a discovery provision"); *TRW Inc. v. Andrews*, 534 U.S. 19, 27-28 (2001) (rejecting discovery rule in Fair Credit Reporting Act because "we have never endorsed the Ninth Circuit's view that Congress can convey its refusal to adopt a discovery rule only by explicit command, rather than by implication from the structure or text of the particular statute"). The copyright statute is no different than the statutes in *Rotkiske* and *TRW*—nothing in the statute clearly evinces Congress' intent to employ a discovery rule (and certainly not a rule premised on such exacting knowledge to trigger the statute, in contravention to more traditional applications of the discovery rule in other contexts). *See Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 375 (2024) (Gorsuch, J., dissenting) ("There is little reason to suppose the Copyright Act's provisions at issue in this case contemplate any departure from the usual [accrual] rules."); *see also Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) (finding discovery rule triggered without actual knowledge of the cause of cancer because plaintiff had enough critical facts to begin investigating the likely cause).

## IX. CONCLUSION

In view of the foregoing, this Court should grant this Motion for Summary Judgment. No reasonable jury could find that Capitol Forum's claims in this litigation accrued after December 16, 2021, within three years of this lawsuit being filed.

Dated: October 21, 2025

Respectfully Submitted,

<u>*/s/ Charles S. Baker*</u>

Charles S. Baker *(pro hac vice)*
charles.baker@troutman.com
Ryan E. Dornberger *(pro hac vice)*
ryan.dornberger@troutman.com
Emma A. Bennett *(pro hac vice)*
emma.bennett@troutman.com
TROUTMAN PEPPER LOCKE LLP
600 Travis St., Suite 2800
Houston, Texas 77002
(713) 226-1200 Telephone
(214) 223-3717 Facsimile

Mark Hannemann
mark.hannemann@troutman.com
TROUTMAN PEPPER LOCKE LLP
200 Vesey St., 20th floor
New York, NY 10281
(212) 415-8600 Telephone
(212) 303-2754 Facsimile

Glenn Pudelka *(pro hac vice)*
glenn.pudelka@troutman.com
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue
9th Floor
Boston, MA 02199-7613
(617) 239 - 0100 Telephone
(617) 227 - 4420 Facsimile

**COUNSEL FOR DEFENDANT BTG PACTUAL ASSET MANAGEMENT US, LLC.**

[redacted]

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1(c), this Motion for Summary Judgment complies with the word count limit of 8,750 words because it contains 7,353 words, including any footnotes and endnotes, according to the word-processing system used to prepare this document, excluding parts of the document that are exempted by Local Civil Rule 7.1(c) (the caption, index, table of contents, table of authorities, signature blocks, and any required certificates).

/s/ *Charles S. Baker*
Charles S. Baker

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2025, a true and correct copy of the foregoing document was filed with the Clerk of Court under seal using the CM/ECF system. A copy of the under-seal document was separately sent via e-mail to all counsel of record.

/s/ *Charles S. Baker*
Charles S. Baker